15811

DICKS v. BROOKLYN COOPERAGE CO.

(37 S. E. (2d), 286)

140

*Mr. Henry H. Edens,* and *Miss Edith Pratt Breedin,* both of Columbia, Counsel for Appellant,

*Messrs. George D. Levy* and *A. S. Merrimon,* both of Sumter, Counsel for Respondent,

March 6, 1946.

Mr. Associate Justice Oxner delivered the unanimous Opinion of the Court.

Herbert Dicks and Emmett Smith, both Negroes, were employed by the Brooklyn Cooperage Company at its plant near Sumter, South Carolina. Dicks was shot by Smith on February 9, 1944, and died several days later from the wounds inflicted. The Industrial Commission made an award in favor of the widow for compensation which was reversed by the Circuit Court. The only question for determination is whether there is any evidence to sustain the conclusion of the Commission that the death of Dicks arose out of and in the course of his employment.

On the day of the shooting Dicks was learning how to pile lumber. It was Smith's duty to instruct him. Dicks was not performing the work in a satisfactory manner and Smith complained. An argument followed over the method of doing the work which ended in a fight between the two men. This incident occurred about 12:30 P. M. The foreman came in while the altercation was in progress. After investigating the matter, the foreman told Smith that he could no longer work under him and sent Smith to the office of the assistant superintendent, who testified that the following occurred between him and Smith: "I said 'Emmett (Smith), what is the matter with you?' He said 'A fellow slapped me. I ain't going to work—to work there any more.' I said 'All right, Emmett, you come back in the morning and I will put you somewhere else'. He said 'No, I would rather have my money and go and get another job.' I said 'No, I ain't going to let you have your money. I want you to work', and I went off and left, and he run up on me down at the mill, he said 'Mr. Sutton, will you give me my release and money.' 'I am not going to do it'. He run up on me again and he wanted a release and I walked off from him again, and about three o'clock he met me again up there at the shop and he asked me again

for a release. I said 'no'. He said 'Well, I have done lost half an evening around here.' I said 'I will tell you what to do, Emmett, you meet me up at the house and cut some wood for me in the yard and when I come home about five o'clock I will give you a piece of money and put you somewhere else.' He said—he says 'I will be there.' I said 'You do that. You wait until I come home.' And that is the last time I saw Emmett, and he left, I thought going home."

There is no testimony showing the exact time when Dicks left the plant that day. He usually quit work around 4:30 in the afternoon and returned to his home, a distance of approximately a mile, along the railroad track. Dicks and Smith were again seen about five o'clock that afternoon on the railroad track at a point about one-half mile from the plant. Several witnesses testified that they saw the two men at that time; that they were standing on the railroad track apparently engaged in an argument; that Smith had a shotgun under his arm; and that Smith suddenly shot Dicks without any apparent provocation. One witness testified that the conversation or argument continued for about fifteen minutes before the shooting occurred, while the other witnesses did not undertake to fix the length of the conversation. No one was able to hear what the two men said during the course of the argument. The record does not disclose the movements of Smith from the time he left the plant until seen with Dicks on the railroad track. Several witnesses testified that Dicks stated to them that Smith had made threats against him at the plant. Smith was not called as a witness.

While not material to this discussion, it may be added that Smith was indicted for murder, pleaded guilty to manslaughter, and a sentence for a period of two years was imposed in the Court of General Sessions.

The words "arising out of and in the course of the employment" as used in the various workmen's compensation acts have been a prolific source of litigation and given rise to countless judicial decisions. It would be difficult to define a fixed boundary dividing the cases which are within the

statute from those that are without. The following observation was made by this Court in *Eargle v. S. C. Electric & Gas Co.,* 205 S. C., 423, 32 S. E. (2d), 240: "No Court or Commission can with certainty do more than decide whether a particular case upon particular facts is or is not within the meaning of the quoted phrase."

The phrases "arising out of" and "in the course of employment" are used conjunctively. One of these elements without the other will not sustain an award. The two elements must coexist. It is generally held that the words "arising out of" refer to the origin or the cause of the accident, while the words "in the course of employment" have reference to the time, place, and circumstances under which the accident occurs. In *Johnson v. Merchant's Fertilizer Co. et al.,* 198 S. C., 373, 17 S. E. (2d), 695, the following was quoted with approval: "An injury arises 'in the course of employment,' within the meaning of the Workmen's Compensation Act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling these duties or engaged in doing something incidental thereto. An accident arises 'out of' the employment, when it arises because of it, as when the employment is a contributing proximate cause."

Unless the incidents of employment be exceptional, the relation between a master and his servant is suspended when the servant leaves the place of his actual employment at the close of his day's work to go to his home. "As a general rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and therefore an injury sustained by accident at such time does not arise out of and in the course of his employment." *Gallman v. Springs Mills et al.,* 201 S. C., 257, 22 S. E. (2d), 715. But, as pointed out in that case and in the subsequent cases of *Eargle v. S. C. Electric & Gas Co., supra,* and *Bailey v. Santee River Hardwood Co. et al.,* 205 S. C., 433,

32 S. E. (2d), 365, there are certain exceptions to the rule. However, we shall not undertake to discuss them as we do not think the facts in this case fall within any of the exceptions set out in those cases.

This Court has not heretofore had occasion to pass upon a question similar to the one under consideration. Numerous cases from other jurisdictions are cited in the briefs of both appellant and respondent. These as well as others found in our own research have been carefully considered. We doubt if all of them can be reconciled. While some of these cases tend in some degree to sustain appellant's contention and others that of respondent, the facts in none of them are exactly analogous to those now before us. A review of these decisions from other jurisdictions would serve no useful purpose and unduly prolong this opinion. We shall proceed to determine whether an award can be sustained under the facts of this particular case.

Assuming for the purpose of this discussion that the fatal assault in the instant case arose from a renewal of the initial difficulty, we do not think there is any evidence to sustain the conclusion that Dicks was shot while in the course of his employment. The immediate difficulty at the plant ceased when the foreman came in during its progress and ordered Smith to go to the office of the assistant superintendent, stating that Smith could no longer work under him. Smith was not permitted to work any more that day. Dicks finished his work for the day and at the time of the fatal difficulty had left the premises of his employer, had passed beyond what is sometimes referred to as the "zone of employment", and was a half of a mile away from the plant. We may assume that he was then on his way home from work. But at this time neither of these men was engaged in the performance of any duty to his employer; each was the master of his own time and could go and come as he pleased. Of course, there was a possibility of either party renewing the initial difficulty at some future time, but that danger existed at all times and not necessarily while Dicks was going to and

from his work. It could have been renewed on that or some subsequent day while Dicks was on an errand entirely disassociated from his work. If the limits of a servant's employment can be extended under such circumstances to cover the distance between the plant and his home, why cannot those limits also be extended to reach any place and any activity in which the servant may be after working hours? The danger of a renewal of the difficulty could exist in one place as well as the other.

While more than one inference might be drawn as to the length of the conversation or argument which preceded the fatal blow, it is undisputed that it continued for several minutes. Smith did not instantly shoot Dicks upon coming in contact with him. The argument on the railroad track may have been a renewal of the one had in the plant, but there is no testimony showing just what occurred during the course of this argument. The fatal blow could have been precipitated by an insult offered or something else said between the parties during this conversation.

Of course, mere distance alone from the place where the quarrel originated is not necessarily the determining factor. By way of illustration, if Dicks had left the plant during the progress of the initial difficulty in order to avoid injury and had been pursued by Smith for a distance of a half of a mile and then assaulted, these circumstances would justify the conclusion that the assault was a continuing one and the injury sustained might properly be held to result from a single assault. But the facts before us present a different situation. While the evidence in this case may have been sufficient to warrant the conclusion that the original difficulty commenced at a time and place which would make any injury resulting therefrom compensable, we do not think there are any circumstances which would justify the conclusion that continuity of cause was so combined with contiguity in time and space that the quarrel from origin to ending should be taken to be one. This seems to have been the test applied by Justice Cordozo in the leading case of *Field et al. v. Charmette*

*Knitted Fabric Co. et al.*, 245 N. Y., 139, 156 N. E., 642. Although an award for compensation was upheld under the particular facts of that case, the line of reasoning by that distinguished Jurist seems to us logical and sound.

We think the lower Court correctly held that the fatal injury to deceased did not arise in the course of his employment. In reaching this conclusion we have not been unmindful of the fact that this Court has repeatedly committed itself to a broad and liberal interpretation of this as well as other parts of the Act.

The lower Court further held that appellant was not entitled to compensation because the deceased was the aggressor in the original quarrel at the plant, but we find it unnecessary to determine whether there was any evidence to sustain an implied finding of fact by the Commission that the deceased was not the aggressor.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER, MESSRS. ASSOCIATE JUSTICES STUKES and TAYLOR and MR. ACTING ASSOCIATE JUSTICE STEVE C. GRIFFITH, concur.