**E. I. DU PONT DE NEMOURS COMPANY, Inc., Appellant,**

v.

**Leo HALL, Appellee.**

**No. 7187.**

United States Court of Appeals
Fourth Circuit.

Argued June 6, 1956.

Decided Sept. 17, 1956.

Thomas B. Whaley and Hoover C. Blanton, Columbia, S. C. (Whaley & McCutchen, Columbia, S. C., on brief), for appellant.

Yancey A. McLeod, Columbia, S. C. (E. McLeod Singletary; McLeod & Singletary, Columbia, S. C. and Henry C. Jennings, Bishopville, S. C., on brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and MOORE, District Judge.

PARKER, Chief Judge.

This is an appeal from a judgment for plaintiff in a personal injury case arising out of an automobile collision. The principal question in the case is presented by the defense that plaintiff's injury was covered by the South Carolina Workmen's Compensation Act, Code 1952 S.C. § 72–1 et seq. Defendant contends that it was so covered and that plaintiff's exclusive remedy is under the act. Plaintiff admits that he was employed by a subcontractor of defendant and that injuries arising out of and in the course of his employment would be covered by the act. He contends, however, that his injury did not so arise and that the act has no application. The District Judge sustained this contention; and from judgment on a verdict assessing damages on the ground of negligence, the defendant has appealed.

The defendant, E. I. DuPont de Nemours Company, was engaged in construction of the Savannah River Project as general contractor under a contract with the United States made through the Atomic Energy Commission. Plaintiff was employed as an electrician-mechanic by the Miller-Dunn Electric Company, which had a contract for the installation of certain electrical equipment for defendant. The area of land embraced by the Savannah River Project was over 200,000 acres, most of which was surrounded by a fence, and the defendant had supervision and control over this entire area, although work was being done only within small areas within this large acreage. The Miller-Dunn Electric Company was engaged at Area 100–P, a separately fenced in area within the large security area, containing about ten acres, and was engaged in work not connected with other work being done at other places within the project. Plaintiff was working at Area 100–P and not elsewhere. On the day of his injury, he had finished work, had "clocked out" and, after waiting 20 minutes for a friend with whom he was accustomed to travel, was on his way home in this friend's automobile and was on a highway three miles distant from Area 100–P, when the automobile in which he was riding was negligently struck by a pickup truck of defendant operated by one of its employees.

The place at which the collision occurred was within the large area over which defendant had supervision; but was upon a highway which had been a public highway prior to the acquisition of the project by the United States, and which was still used as a public highway by persons permitted to enter thereon, whether as employees, concessionaires or

for business purposes. For national security reasons no one was allowed to enter the area embraced by the project without a permit evidenced by a badge or pass, which he was required to show at the gate when entering or leaving. Defendant policed the entire project, including the highways therein, and allowed no one to enter or leave without showing his badge or pass. Plaintiff, while three miles distant from the area in which he had been working, was eight or more miles distant from the gate at the perimeter of the project when the collision occurred. He had no other business within the project and was traveling the road in an automobile on his way home subject to no hazard connected with his employment and subject to no duty connected therewith. To get out of the security area, he had to display his badge at the gate, but this was in no sense a task or duty connected with the work he was employed to do. In holding that plaintiff's injuries were not covered by the Workmen's Compensation Act, the District Judge said:

"The question that arises out of the stated facts is: Did plaintiff's alleged injuries arise out of and in the course of his employment? I do not think so. He had not only finished his day's work for his employer, but he had actually left the area of his employment and had gone three or four miles on his way home. There is no evidence that plaintiff's employer required plaintiff to use the vehicle or the road that he did use in going to and from his work. Plaintiff's employer had no control over the automobile in which plaintiff was traveling at the time of the collision. The route over which plaintiff traveled was the choice of the person in whose automobile plaintiff was traveling. It was not selected by plaintiff's employer. There is no contention that plaintiff was paid for all or any part of the time consumed by him in going to or from the premises where he was employed."

We agree with this conclusion. The South Carolina statute, Code of Laws of South Carolina, 1952, Title 72, § 14, provides that "injury" as there used shall mean only "injury by accident arising out of and in the course of the employment". This language has been construed by the Supreme Court of South Carolina to require, not only that the injury occur within the period of employment, but also that it arise because of the employment " ' "as when the employment is a contributing proximate cause." ' " Johnson v. Merchant's Fertilizer Co., 198 S.C. 373, 17 S.E.2d 695, 697; Dicks v. Brooklyn Cooperage Co., 208 S.C. 139, 37 S.E.2d 286, 287. In the case last cited that court said:

"The phrases 'arising out of' and 'in the course of employment' are used conjunctively. One of these elements without the other will not sustain an award. The two elements must coexist. It is generally held that the words 'arising out of' refer to the origin or the cause of the accident, while the words 'in the course of employment' have reference to the time, place, and circumstances under which the accident occurs. In Johnson v. Merchant's Fertilizer Co., 198 S.C. 373, 17 S.E.2d 695, 697, the following was quoted with approval: 'An injury arises "in the course of employment," within the meaning of the Workmen's Compensation Act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling these duties or engaged in doing something incidental thereto. An accident arises "out of" the employment, when it arises because of it, as when the employment is a contributing proximate cause.' "

In the case of Gallman v. Springs Mills, 201 S.C. 257, 22 S.E.2d 715, 717, and Dicks v. Brooklyn Cooperage Co., supra, 37 S.E.2d at page 287, the rule was recognized that "an employee going to or coming from the place where his

work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and therefore an injury suffered by accident at such time does not arise out of and in the course of his employment." In the Gallman case the court recognized, as exceptions to the rule, cases where the means of transportation is furnished by the employer [1] or the time thus consumed is included in wages or where the employee, on his way to or from his work, is charged with some duty or task connected with his employment.[2] It is perfectly clear, however, that neither of these exceptions is applicable here. A feeble argument is made that because employees on the project were paid higher wages than in the surrounding area, travel was being paid for; but there is nothing in the record to support such argument. It is argued, also, that the duty to show badge or pass at the gate was a duty continuing the employment in the meantime; but this was a matter of security regulations observed by all who entered the area, not a duty or task connected with plaintiff's employment.

Attempt is made to find coverage under the rule generally applied that injuries are covered if sustained by an employee while going to or from his place of work upon premises owned or controlled by the employee. See 58 Am.Jur. p. 726 et seq.; notes 49 A.L.R. 424, 82 A.L.R. 1043. We think, however, that this rule would apply to Area 100–P, where plaintiff was working and where he would presumably encounter hazards of his employment in entering or leaving. We see no basis upon which it can logically be applied to the area of more than 200,000 acres, over which the control exercised by defendant was merely for security purposes, except as to the limited areas in which work was being carried on. See Carper v. Workmen's Com-

pensation Commission, 121 W.Va. 1, 1 S.E.2d 165, 167 and cases there cited. As said by the Supreme Court of South Carolina in the Gallman case, supra, 22 S.E.2d at page 718, " 'the test is not so much as to whether the employer owns or controls the place where the injury occurred, but rather, whether it happens on the premises where the work is to be performed.' " In that case, where a street was a part of the mill village owned by a cotton mill, coverage was denied to an employee who was injured by slipping on ice in the street while going to work in the mill. The court said:

"The employment of the respondent had relation to the operation of machinery in the mill, and no duty was required of him on the streets traversing the property of his employer. His compensation was fixed by the time he spent or the amount of work he did in the plant performing the tasks which he was employed to do. The time he spent in going to the mill and in returning to his home would have no part in the amount of that compensation.

"We do not consider it at all controlling that the respondent, on the occasion in question, was proceeding from his home to the mill to begin a day's work. In the course of this trip the respondent was in no sense under the control of his employer. * * *

"Nor does it appear to us to be material that the street on which the respondent was travelling constituted the private property of the employer. * * * the hazards to which the respondent subjected himself when he entered upon the street are the same hazards to which all members of the public who went upon the street subjected themselves. Those hazards were in no sense con-

1. For other South Carolina cases sustaining coverage where transportation was furnished by the employer, see Ward v. Ocean Forest Club, 188 S.C. 233, 198 S.E. 385; Bailey v. Santee River Hardwood Co., 205 S.C. 433, 32 S.E.2d 365.

2. For cases sustaining coverage where the employee was performing a task connected with his employment, see Ervin v. Myrtle Grove Plantation, 206 S.C. 41, 32 S.E.2d 877; Pelfrey v. Oconee County, 207 S.C. 433, 36 S.E.2d 297.

nected with the employment of the respondent, nor could an accident occurring thereon be said to arise out of and in the course of the respondent's employment."

We do not think that coverage can be found in the fact that plaintiff necessarily used the highway within the project nor in the control exercised by the defendant over those highways. The case is not one where plaintiff was required to use a dangerous place like a railroad yard in coming to or leaving his place of work.[3] He was using an ordinary public highway which before the coming of the Atomic Energy Commission had been under the control of the state and which was then under the control of defendant only for security reasons. It was used by the public admitted on the project like any other highway would be used; and there was nothing connected with its use which could reasonably be said to be a hazard of the employment in which plaintiff was engaged. Injury on such highway is governed by the principles to be applied in any other case where injury occurs when plaintiff is injured off the premises while coming to or returning from work, i. e., by whether what caused the injury could properly be considered a hazard of the employment.[4] Thus, in Lamb v. Pacolet Mfg. Co., 210 S.C. 490, 43 S.E.2d 353, coverage was sustained where the employee was injured as a result of ice on the steps leading to the entrance of the employer's plant. This was rightly considered a hazard incident to the employment. In Hinton v. North Georgia Warehouse Corp., 211 S.C. 370, 45 S.E.2d 591, however, coverage was denied where the automobile of an employee on his way to work was struck as he was making a left turn to enter his employer's premises. In that case the court said, 45 S.E.2d at page 592:

"There were no causative defects in the highway or county road at the place where the respondent received his injury, nor was there any defect in the premises of the employer upon which the respondent was entering. The only inherent danger in travelling the road under discussion, and making a left turn across same, arose from the fact that it was a much travelled highway, and automobiles were driven thereon at considerable speed. The general public, therefore, was subjected to the same danger in making a left turn off such road."

In the case of Eargle v. South Carolina Electric & Gas Co., 205 S.C. 423, 32 S.E.2d 240, which sustained coverage where the employer had sanctioned the use of a dangerous method of ingress and egress, and which was distinguished in the Hinton case, supra, the court laid down the following principles as governing in such cases, 32 S.E.2d at page 244:

"It should be borne in mind that the statute does not confine the injuries which it embraces to those arising out of and in the course of the employment during regular working hours; but, by its very terms, embraces all injuries by accident arising out of and in the course of the employment. Of course, for an accident to arise out of the employment, the injury of the employee must be reasonably incidental to his employment. * * * The fact that the accident happens upon a public road or street, as in the Gallman case, supra, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of a causal relationship, if the danger be one to which the employee, by reason of and in connection with his employ-

---

3. See Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 423, 44 S.Ct. 153, 68 L.Ed. 366; Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507; Christian v. Chicago & Ill. Midland R. Co., 342 Ill.App. 656, 97 N.E. 2d 576; See also 1 Larson, Workmen's Compensation 198 et seq.; 8 Schneider, Workmen's Compensation, p. 53.

4. See Schneider, Workmen's Compensation, vol. 8, pp. 7, 8, 37.

ment, is subjected peculiarly or to an abnormal degree. Cudahy Packing Co. [of Nebraska] v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532."

 Controlling here, we think, is the decision of the Supreme Court of South Carolina in McDonald v. E. I. DuPont De Nemours & Co., 223 S.C. 217, 74 S.E. 2d 918. In that case an employee who had been working in one of the work areas of the Savannah River Project had "clocked out" and started home. He had passed beyond the enclosure of his immediate work area and was crossing the highway when struck by an automobile driven by another employee of defendant on his way home. The highway was within the area which was eventually to be controlled for security purposes by defendant, and the greatest part of the traffic on it was by automobiles used by personnel of the defendant. The only difference between that case and this is that here plaintiff had to show his badge at the gate of the perimeter of the security area. Coverage by the act was denied in that case; and to hold that there was coverage here, where the circumstances are precisely similar except for the security precaution requiring the showing of the badge, could not be justified on any basis of reason. There was no hazard of the employment here that was not present in that case; and certainly there was no magic in the presentation of the security pass or badge which should affect the application of a statute relating to such hazard.

Little need be said as to the other questions raised by the appeal. The trial judge, having ruled that plaintiff's injury was not covered by the act, properly excluded evidence that plaintiff had accepted a check of $50 as an accommodation from an insurance carrier, particularly as plaintiff has never applied for workmen's compensation and there was no allegation in the answer raising any defense of estoppel or election of remedies. The notice of plaintiff's discharge from the Navy Yard sometime after his injury was admissible for the purpose of showing that he was not purposely idle and could not have been prejudicial to defendant in any event.

The question raised by the motion to set aside the verdict on the ground of its being excessive is one resting in the sound discretion of the trial court and is not reviewable here in the absence of abuse. There was evidence to the effect that plaintiff sustained serious and permanent injuries to his spine and brain, that he has suffered great pain and in the opinion of physicians will continue to suffer for an indefinite period and that he has been to a large extent disabled from earning a living by the injuries received. There was evidence to the contrary, but the issue was one of fact for the determination of the jury. We cannot, of course, try the issue of fact, nor do we think that upon the conflicting evidence we would be justified in holding that the trial judge abused his discretion in denying the motion to set aside the jury's verdict as excessive.

Affirmed.