DEPARTMENT OF CORRECTION ET AL. *v.* HARRIS

[No. 340, September Term, 1962.]

*Decided June 28, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*Charles R. Goldsborough, Jr., Special Attorney,* with whom were *Thomas B. Finan, Attorney General, J. Howard Holzer, Special Assistant Attorney General,* and *J. Raymond Buffington, Jr., Special Attorney,* on the brief, for the appellants.

No brief and no appearance for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellee, a prisoner in the penitentiary, fell while descending the steps from the second to the first floor, en route from the sewing shop on the fourth floor, where he worked as a sewing machine operator, to the infirmary on the first floor, where he went daily for treatment of a physical condition unrelated in any way to his work. The Compensation Commission awarded compensation, and Judge Cardin, saying that the only question before him was whether the claimant was on the premises of the employer when he was injured, affirmed.

The facts were not in dispute, and the right of the claimant to receive compensation became a matter of law.

Harris had previously been operated on in the prison hospital for an ailment, the origin of which was entirely unrelated to any penitentiary activity. The incision became infected and required daily sitz baths. For about a month Harris had left the sewing shop each day to go to the infirmary to soak the wound, and then he would wait until the pores had dried before returning to work. The process took from twenty to forty-five minutes, depending on how long he had to wait in the infirmary before he was treated.

On the morning of the day he was injured he went to work at eight-thirty, the usual time, at his customary task in the sewing room. After ten, and before ten-thirty o'clock, he showed his pass to the infirmary to the shop officer, left the sewing room on the fourth floor, went down the stairs to the third floor and through the shoe shop on that floor, then down another flight of stairs to the second floor on which the cutting shop was. As he stepped from the landing, near the cutting shop door, to go down the stairs to the first floor, he slipped on some soap and fell half way down the flight of steps, injuring his back.

At the time of the injury, in March 1961, Maryland had a provision, Code (1960 Supp.), Art. 101, Sec. 35, making the compensation law applicable to prisoners engaged in extra-hazardous work in the penitentiary or House of Correction.[1] It was under this provision that the Commission and the court acted.

A claimant of compensation, to be successful, must show an injury due to an accident arising both out of, and in the course of, his employment. It has been said that the words "out of" refer to the cause or origin of the accident, while the phrase "in the course of" refers to the time, place and circumstances under which it occurs. There must be a causal connection between the conditions under which the work is required to be done and the ensuing injury. The causative danger

---

1. By Ch. 440 of the Laws of 1961 the provision for incarcerated prisoners was repealed.

must be incidental to the nature of the work and not independent of the relation of master and servant. This is to say that the injury arises out of employment when it results from some obligation, condition or incident of the employment, under the circumstances of the particular case. *Scherr v. Miller,* 229 Md. 538, 543 ; *Perdue v. Brittingham,* 186 Md. 393, 402.

An injury arises in the course of employment when it happens during the period of employment at a place where the employee reasonably may be in the performance of his duties "and while he is fulfilling those duties or engaged in something incident thereto." Inquiries pertinent in this regard include: When did the period of employment begin? When did it end? When was its continuity broken? How far did the employee, during the period of employment, place himself outside the employment? *Watson v. Grimm,* 200 Md. 461, 466.

We cannot see that claimant's injury arose out of and in the course of his employment. His walk from the sewing shop toward the infirmary was not motivated or caused by any condition of his work, it was not incidental to the business, and the danger of harm in walking down the steps was independent of the relation of master and servant, and a danger common to all the prisoners, without regard to their work. The case, in this respect, is analogous to *Miller v. United Rwys. and Elec. Co.,* 161 Md. 404, 408, in which a street car cleaner was killed by an automobile as he was crossing a street after having alighted from one street car to transfer to another to ride, on a company pass, to get his pay at one of four car barns designated by the company. Chief Judge Bond said for the Court: "The hazards of the street were not hazards into which his employment with the railway company had sent him; they seem to have been, rather, hazards voluntarily met by Miller in common with all other citizens on the streets that day."

Harris did not fall during the performance of his duties of operating a sewing machine or the doing of any activity incident thereto. The continuity of the employment was broken when he left work to go on a personal errand. The medical treatment he left work to get was not the equivalent of a break from work for rest, relief or refreshment. It had no more relation to his work than any medical care has in keeping an em-

ployee in good enough health generally to be able to work or continue to work.

An injury to an employee while on a personal errand or away from work in connection with his own affairs has been held not compensable. *Refining Company v. Forrester,* 180 Md. 517; *Perdue v. Brittingham, supra.* In *Forrester,* an oil company sales promoter, spending the week in Aberdeen at the instance of the employer, to further its sales, was killed in the early morning hours while on a trip to a night club taken primarily for his own pleasure. It was held that the accident did not arise out of and in the course of his employment despite the fact that while at the night club he transacted some business for his employer. In *Perdue,* the driver of a motor truck was struck and killed by a passing car while standing on the center line of the highway about a quarter of a mile from his truck, which he had parked ten or fifteen feet off the dual highway it had been travelling. The driver had left the truck two hours before he was killed. There was nothing to show he needed help for the truck or himself, or where he had been in the two-hour interval. It was held there was no evidence legally sufficient to establish that the driver's death arose out of, or in the course of, employment.

In *O'Neil v. Carley Heater Co.* (N. Y.), 113 N. E. 406, an employee, installing his employer's product in a manufacturing plant, became ill. An employee of the plant suggested he go to a place in the plant he designated, to take epsom salts. He went and took chloride of barium by mistake, and died. His death was held not compensable. In *Pierson v. Interborough Rapid Transit Co.,* 172 N. Y. S. 492, the employee, while on the way to his dentist during a two-hour layoff from work, was killed by a train of his employer. It was held that the compensation act did not apply and that his personal representatives could maintain a tort action against the transit company.

An employee who died from a heart attack while walking to the plant infirmary after being taken ill at work was held not entitled to compensation in *Tritschler v. Merck and Co.* (Sup. Ct. N. J.), 168 A. 2d 666. *Cf. Anderson v. Chatham Electronics* (Sup. Ct. N. J.), 175 A. 2d 256.

The contention of the claimant, made to the court below (there was no brief or appearance for the appellee in this Court) and apparently accepted by Judge Cardin, that because the employee was injured on the premises of the employer he was entitled to compensation, will not stand analysis. For the purpose of the "going and coming rule," the employer's premises generally are held to include his property used in, or forming an integral part of, his business (with various exceptions, not here applicable, such as the proximity rule discussed in *Maryland Paper Products Co. v. Judson,* 215 Md. 577). 99 C. J. S. *Workmen's Comp.* Sec. 231 (b). The rule, in its broad form, is that if the injury is sustained on the premises of the employer while the employee is going to or from the actual place of work, there is coverage on the theory that the entire plant or working area is the premises, although the injury occurs in a part in which the employee does not regularly work. 1 *Larson's Workmen's Compensation,* Sec. 15.41. On the other hand, where this test would be unrealistic or unreasonable under the circumstances, it has been held that only the particular area or department in which the employee worked regularly was the premises of the employer for the purposes of the rule. *E. I. DuPont de Nemours Co. v. Hall* (4th Cir.), 237 F. 2d 145, 149; *Bennett v. Vanderbilt University* (Tenn.), 277 S. W. 2d 386. In the *Dupont* case, the employer's area was some 200,000 acres. Claimant worked in Area 100-P, a fenced-in area within the larger area. He left 100-P and was hurt three miles away on a road within the larger area. In permitting a personal injury action, Judge Parker said for the Court:

> "We think, however, that this rule (the premises rule) would apply to Area 100-P where plaintiff was working and where he would presumably encounter hazards of his employment in entering or leaving. We can see no basis upon which it can logically be applied to the area of more than 200,000 acres * * * except as to the limited areas in which work was being carried on."

In the *Vanderbilt University* case, the claimant fell on a parking lot owned by the University across the street from the

University Hospital building in which she worked. It was held that while she was on "property" of the employer, she was not on its "premises" within the meaning of the rule. See also *United States Steel Co. v. Isbell* (Ky.), 275 S. W. 2d 917; *McDonald v. E. I. DuPont de Nemours & Co.* (S. C.), 74 S. E. 2d 918.

We think that in the case of a penal institution in which the claimant not only works but must live, twenty-four hours a day, seven days a week, it would be unrealistic and unreasonable to consider the whole prison and its adjacent enclosed area to be the working premises of the employer. The premises of the employer, as far as the claimant, Harris, was concerned, were only the sewing shop in which he worked, and the proximity rule, which, as was noted in the *Maryland Paper Products Co.* case, *supra* (at p. 584 of 215 Md.) is or is not applicable, as the facts of the particular case dictate, should not be invoked. The stairways of the prison are, we think, as we have said, analogous, as far as the prisoners are concerned, to the streets of a city. (From most points of view it would undoubtedly be difficult for the prisoners to see an analogy.)

If it be assumed that the premises included the whole prison, the claimant would not be helped. An injury to an employee on the employer's premises must arise out of the employment to be compensable. The accident must have had its origin in some risk connected with or incidental to the employment, even though it happens on the premises. *Perdue v. Brittingham, supra* (at p. 405 of 186 Md.), citing non-compensable injuries such as the waitress shot at her work by a coemployee for a reason unrelated to her work, and the shooting of a night watchman, murdered on the job, for a reason unrelated to his work (*Todd v. Easton Furniture Mfg. Co.,* 147 Md. 352).

Other Courts have held that the accident did not have its origin in some risk connected with or incidental to the employment if it came while the employee was on a personal mission, errand or undertaking of his own. In *Horton's Case* (Mass.), 176 N. E. 648, a dishwasher on the way back from the toilet stepped into a locker room to read a paper and was injured. It was held that he was on an errand of his own, and his work did not bring about the injury. A similar ruling was given in

*Bell v. Dewey Bros.* (N. C.), 72 S. E. 2d 680, where a night watchman was hurt while washing his own car for his own gratification on the employer's premises. There was the same holding in the situation in which the employee was injured at a union meeting in the plant. *Pacific Indemnity Co. v. Industrial Accident Comm.* (Ct. App. Cal.), 81 P. 2d 572. See *In re Malmquist* (Ida.), 300 P. 2d 820 (employee, leaving work, boarded truck of a third person on employer's premises and fell—held that riding on the truck was for the personal convenience of the employee). See also *Brandon v. Lozier-Broderick & Gordon* (Kan.), 163 P. 2d 384 (employee fell off truck on land of employer, returning from personal errand made with permission and without deduction of pay—held that the permission to go without deduction of pay did not, of itself, make the errand a part of the employee's work).

The affirmance by the Baltimore City Court of the order of the Compensation Commission, awarding compensation, must be reversed.

*Order reversed, with costs.*