## PROCTOR-SILEX CORPORATION, ET AL. *v.* DeBRICK

[No. 253, September Term, 1968.]

*Decided May 9, 1969.*

478

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*G. Joseph Sills, Jr.,* with whom was *R. Roger Drechsler* on the brief, for appellants.

*Joel H. Pachino* with whom were *Irwin S. Friedman* and *Myles F. Friedman* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

The sole question presented in this appeal is whether appellee, Mrs. DeBrick, sustained an accidental personal injury arising out of and in the course of her employment with Proctor-Silex Corporation (Proctor) on Monday, January 24, 1966.[1] Judge Jenifer in the Circuit Court for Baltimore County answered in the affirmative. We shall sustain his action.

Mrs. DeBrick had been an employee of Proctor for a number of months prior to the date of the accident. On that morning she drove her car to a parking lot leased by Proctor. It is located in Baltimore County across Coolidge Avenue from Proctor's plant. The south end of the parking lot is on a direct line with the north end of the plant building where Mrs. DeBrick did her work. There had been snow the prior weekend. Mrs. DeBrick arrived between 7:30 and 7:45 A.M. on the morning in question. Her starting time was 8:00 A.M. Under plant regulations she was not permitted to "punch-in" earlier than eighteen minutes prior to her starting time. She was paid on the basis of time punched on the clock.

The snow had been removed from the parking lot, permitting employees to park on it. Upon arriving on the parking lot Mrs. DeBrick walked diagonally across Coolidge Avenue and then in a southerly direction on the pavement provided for pedestrian traffic in front of her employer's plant to a point somewhere between the entrance to the office of the plant and the entrance provided for the employees. At this location she slipped and fell on the ice thus causing the injury about which complaint is here made.

---

1. Monday after the "blizzard of '66".

This matter arises under Code (1964 Repl. Vol.) Art. 101, § 15 which provides in pertinent part:

> "Every employer subject to the provisions of this article, shall pay * * * compensation * * * for the disability * * * of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury * * *."

In *Department of Correction v. Harris,* 232 Md. 180, 192 A. 2d 479, (1963), Judge (now Chief Judge) Hammond for this Court said:

> "A claimant of compensation, to be successful, must show an injury due to an accident arising both out of, and in the course of, his employment. It has been said that the words 'out of' refer to the cause or origin of the accident, while the phrase 'in the course of' refers to the time, place and circumstances under which it occurs. There must be a causal connection between the conditions under which the work is required to be done and the ensuing injury. The causative danger must be incidental to the nature of the work and not independent of the relation of master and servant. This is to say that the injury arises out of employment when it results from some obligation, condition or incident of the employment, under the circumstances of the particular case. *Scherr v. Miller,* 229 Md. 538, 543; *Perdue v. Brittingham,* 186 Md. 393, 402.

> "An injury arises in the course of employment when it happens during the period of employment at a place where the employee reasonably may be in the performance of his duties 'and while he is fulfilling those duties or engaged in something incident thereto.' Inquiries pertinent in this regard include: When did the period of employment begin? When did it end? When was its continuity broken? How far did the employee, during the period of employment, place himself outside the employment? *Watson v. Grimm,* 200 Md. 461, 466." *Id.* at 183-84.

In *Harris* the claimant, an inmate of the penitentiary, had been employed at the sewing shop. He left his machine for a personal errand. He was denied compensation, the continuity of his employment having been broken, this Court having stated:

> "The medical treatment he left work to get was not the equivalent of a break from work for rest, relief or refreshment. It had no more relation to his work than any medical care has in keeping an employee in good enough health generally to be able to work or continue to work." *Id.* at 184-85.

*Giant Food, Inc. v. Gooch,* 245 Md. 160, 225 A. 2d 431 (1967) was a parking lot case where a parking lot attendant arrived on his employer's parking lot and was in the process of locking his car when he was accosted by an individual who believed him to be the paramour of the assailant's wife. The employee fled and was shot behind the food store of his employer. Chief Judge Hammond there said for this Court:

> "We think it clear that the commission and the reviewing court could have found that the injury occurred in the course of Gooch's employment. He was on the parking lot on which he regularly worked and was but minutes away from actually engaging in his regular duties, when he was interrupted by Jones. 'An employee is in the course of his employment where he is injured before the hour of work while on the premises for the purpose of engaging in the day's work.' *Rice v. Revere Copper & Brass, Inc.,* 186 Md. 561, 566. See also *Maryland Paper Products Co. v. Judson,* 215 Md. 577." *Id.* at 162.

In *Gooch* liability of the employer was established on the statutory basis of the willful or negligent act of a third person directed against the employee while in the course of his employment, and not on the basis of an injury arising out of the employment.

In *Rice v. Revere Copper & Brass, Inc.,* 186 Md. 561, 48

A. 2d 166 (1946), to which reference was made in *Gooch,* Judge (later Chief Judge) Henderson said for this Court:

> "We hold that an employee is in the course of his employment where he is injured before the hour of work while on the premises for the purpose of engaging in the day's work. * * *
>
>                 * * *
>
> "The crucial question is whether the injury 'arose out of' the employment. Rice did not 'step aside from his employment,' as in the Hill case, *supra,* but it is still necessary to find a causal connection between the employment and the injury. 'The mere fact that the work caused his association with the other man is not sufficient.' *Hill v. Liberty Motor & Engineering Co.,* 185 Md. 613, 47 A. 2d 43; *Perdue v. Brittingham,* 186 Md. 393, 47 A. 2d 491, and cases cited.
>
> "We think the injury in the instant case was not attributable to the working environment." *Id.* at 566.

In *Rice* a fellow employee walked over with a shovel and struck Rice a blow, fracturing his skull and causing his death. The case was decided prior to the statutory addition, which is discussed fully in *Gooch, supra.*

The general rule in matters such as in the instant case is as stated in 1 Larson, *Workmen's Compensation Law,* § 15.14 (1968):

> "One category in which compensation is almost always awarded is that in which the employee travels along or across a public road between two portions of his employer's premises, whether going and coming, or pursuing his active duties.
>
> "Since, as shown later, a parking lot owned or maintained by the employer is treated by most courts as part of the premises, *the majority rule is that an injury in a public street or other off-premises place between the plant and the parking lot is in the course of employment, being on a necessary route between the two portions of the premises.* But if the parking lot is

a purely private one, the principle of passage between two parts of the premises is not available, and an employee crossing a public street to get to the parking lot is not protected." (emphasis added)

At § 15.41, it is further stated:

"As to parking lots owned by the employer, or maintained by the employer for his employees, *the great majority of jurisdictions consider them part of the 'premises,' whether within the main company premises or separated from it.*" (emphasis added)

Proctor takes comfort from *Salomon v. Springfield Hospital,* 250 Md. 150, 242 A. 2d 126 (1968), as well as from *Harris, supra.* As previously indicated, *Harris* is distinguishable on its facts. *Salomon* is likewise distinguishable. There Judge Marbury said for this Court:

"The final contention of the appellant is that she had actually entered the hospital grounds and was therefore covered under the 'on the premises' exception to the going and coming rule. While we recognize that ordinarily an employee who has arrived on his employer's premises as usual, in preparation for beginning his day's work, is considered to be on the premises and therefore covered by workmen's compensation even though his actual employment has not begun, we also recognize that 'premises' does not necessarily include all property owned by an employer. *Dept. of Correction v. Harris,* 232 Md. 180, 186, 192 A. 2d 479; *E. I. DuPont de Nemours Co. v. Hall,* 237 F. 2d 145; *Bennett v. Vanderbilt University,* 277 S.W. 2d 386. * * *

"In the instant case, although the claimant had entered the south gate of the hospital, she had not reached that part of the hospital grounds where her duties of employment were carried on. Mrs. Salomon was employed in a supervisory capacity as head of the social service department. The record before us indicates that

none of her duties was expected to be performed in the area where she was injured." *Id.* at 155.

Proctor also derives comfort from the fact that in *Salomon* and in *Harris* this Court cited *Bennett v. Vanderbilt University* (Tenn.), 277 S.W.2d 386 (1955). In that case compensation was denied where an individual sustained injuries on a parking lot belonging to her employer located across the street from the employer's building. There was a specific finding in that case that it was not "a part of the contract of employment that she was to have this free parking space." The case was cited earlier by this Court for the broad proposition "that the mere fact that the employee is on the premises or property owned by the employer at the time the employee is injured, is not determinative.", as was *E. I. DuPont de Nemours Co. v. Hall,* 237 F. 2d 145 (4th Cir. 1956), where the employer's area was some 200,000 acres and the claimant worked in Area 100-P, a fenced-in area within the larger area. He was hurt three miles away on a road within the larger area. Judge Parker there said:

> "We think, however, that this rule (the premises rule) would apply to Area 100-P where plaintiff was working and where he would presumably encounter hazards of his employment in entering or leaving. We see no basis upon which it can logically be applied to the area of more than 200,000 acres * * * except as to the limited areas in which work was being carried on." *Id.* at 149.

On the basis of *Gooch, supra,* and *Rice, supra,* and in accordance with the law generally, we conclude that had the accident occurred inside the front door of Proctor's building or on the parking lot, the accident would clearly have been one which "occurred in the course of" Mrs. DeBrick's employment. As indicated, however, it is not sufficient for the injury to have been incurred in the course of the employment, it must also have arisen "out of" the employment of Mrs. DeBrick.

In *Sica v. Retail Credit Co.,* 245 Md. 606, 227 A. 2d 33 (1967) an employee was injured while at a picnic sponsored by the employer. Judge Oppenheimer for this Court said:

"On the undisputed evidence, taken as a whole, we find that the employer derived substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale common to all kinds of recreation and social life. * * * We hold that Sica's accidental injury was sustained within the sphere of his employment and arose out of it." *Id.* at 618-19.

In *Maryland Casualty Co. v. INA,* 248 Md. 704, 238 A. 2d 88 (1968) this Court was concerned with an injury to a stable employee. He slept in a dormitory near the stable. He was expected to act as a watchman in case of emergencies that might arise at any time of the day or night. When there were lulls in the work he was free to do what he wished with his free time. After having a light breakfast and exercising the horses he decided to have coffee at a restaurant about a half a mile from the track. He left the track area in an automobile owned by his employer, which he was authorized to use, and was injured by a train approximately 100 yards from the main gate to the race track. This Court held that the injury arose out of and in the course of his employment.

In *Harrison v. Central Con. Co.,* 135 Md. 170, 180, 108 A. 874 (1919) and *Central Construct. Co. v. Harrison,* 137 Md. 256, 112 A. 627 (1920) our predecessors were concerned with an employee injured on his way to work while attempting to board a train on which transportation was provided by the employer, without expense to the employee, as a part of the contract of employment. The Court held the action was one arising out of and in the course of the injured worker's employment.

Mrs. DeBrick had arrived at a parking lot under the operation and control of her employer provided by that employer for the employees. She was proceeding directly from that parking lot to the place where she was to perform her work for her employer. Under our prior decisions it would appear that if this accident had taken place on the parking lot or between the entrance to Proctor's factory and the time clock no question would be presented as to whether the injuries arose "out of" the claimant's employment. The question then next presented

is whether Mrs. DeBrick is to be denied compensation in that hiatus when she was crossing from the parking lot to the building in which she was employed when she slipped and fell on a pavement of her employer, the record indicating that the sidewalk there existed only in front of the employer's building, there being no sidewalk on the parking lot side of the street and no sidewalk otherwise on the building side of the street.

In *John Roger's Case,* 318 Mass. 308, 61 N.E.2d 341 (1945) the Supreme Judicial Court of Massachusetts had before it facts very similar to the case at hand, although the employee was not there injured in the "hiatus" between parking lot and plant. It there said :

> "The employee worked in a hat factory. He was accustomed to come to work in an automobile of a fellow employee which would be parked in a 'parking lot' owned and 'furnished' by the employer where the employer permitted its employees to park. At the time of the injury the automobile was parked as usual in the 'parking lot.' The employee left it to go to work, and while still on the lot and 'going down an incline,' he fell and broke an ankle. 'It was no part of the duty of the employee to use an automobile to reach his work.' The furnishing of the 'parking lot' was 'no part of the contract of employment.' Although the board did not expressly find that this lot was opposite the employer's factory, the uncontradicted evidence both of the employee and of the insurer was to that effect, and that fact seems to have been assumed. It was necessary, however, to walk a short distance down the street to the plant entrance.

> "These facts require as matter of law a decree for the employee. Although the employee was not obliged to come to work in an automobile, and the employer was not obliged by contract to furnish the 'parking lot,' yet it is plain that it did furnish the lot as an incident of the employment, and that the employee, while actually on his employer's premises and on his way to the place where his day's work was to be performed

by a route which he was permitted and expected to take, fell and was injured. It is of no consequence that a street intervened between the part of the employer's premises where the employee fell and the part where he was to work. The 'parking lot' was used as an adjunct to the factory. The case stands just as it would if the automobile had been parked on the same lot on which the factory building stood and the employee had fallen while walking from the automobile to the factory door. The injury arose out of and in the course of the employment." (citing authorities) *Id*. at 308-09.

Similar decisions (also without the "hiatus") are found in *DeHoyos v. Industrial Commission*, 26 Ill. 2d 110, 185 N.E.2d 885 (1962), in *Maxim's of Ill., Inc. v. Industrial Comm.*, 35 Ill. 2d 601, 221 N.E.2d 281 (1966) and in *Hughes v. American Brass Co.*, 141 Conn. 231, 104 A. 2d 896 (1954).

A situation almost identical to the case at bar is found in *Lewis v. Walter Scott & Co., Inc.*, 50 N.J.Super. 283, 141 A. 2d 807 (1958). In that case, the employee was injured when he slipped and fell on an icy sidewalk while walking on his way to work from the employer's parking lot to the employees' entrance of the building in which he worked. The only means of access from the lot to the building was along the public sidewalk on which the accident happened.

The court there said:

"Under the premise of the correctness of the cases holding that an accident in a parking lot is compensable, the period of petitioner's employment on the day in question must be regarded as having begun when he arrived at the lot. Absent any deviation therefrom there is no rational justification for any hypothesis that the period of the employment was interrupted during the time when petitioner was proceeding by the only available route from the lot to the building in which his duties were to be performed. While on the sidewalk during that passage he was at a place where he might 'reasonably be,' in relation to the employ-

ment. In principle, therefore, the accident occurred in the course of the employment." *Id.* at 286-87.

Coverage was extended in the factually similar case of *Gaik v. National Aniline Div., Allied Chem. & D. Corp.*, 173 N.Y.S. 2d 409 (1958) appeal den. 182 N.Y.S.2d 1023 (1959). In that case, the claimant was employed as a chemical press operator. A parking lot was provided as part of the facilities furnished claimant by the employer. This lot was separated from the plant where claimant worked by intervening public streets and was about two blocks away. On the day in question, claimant left the plant and as he was walking on the public sidewalk to the lot, he slipped and fell on some broken glass. The court, in upholding coverage, stated:

"* * * We are of opinion, however, the Board was right in holding that the employment continued until the claimant had used the employer's facility provided for the purpose of aiding his transportation to and from employment. The case should be governed by principles that would apply, for example, if the employer had provided a cloak room or a rest room or similar facility on the other side of the public walk and the employee was injured getting there." *Id.* at 410.

Mrs. DeBrick was in no way deviating from her employment. She had arrived at the premises of her employer and was proceeding directly to her work. Her conduct is in no way to be compared with that of Wells in *Blake Construction v. Wells*, 245 Md. 282, 225 A. 2d 857 (1967), where Wells, a night watchman who was supposed to be watching heaters under tarpaulins at a construction site to see that concrete did not freeze, was found in an automobile asphyxiated by carbon monoxide with a woman, not his wife, in the vehicle with him, nor is Mrs. DeBrick's conduct comparable to that of the claimant in *Coates v. J. M. Bucheimer Co.*, 242 Md. 198, 218 A. 2d 191 (1966), where the claimant while on her regular coffee break went to inspect a new lounge then under construction. In the latter case Judge Horney said for this Court:

"In the case at bar, the injury sustained by the employee arose neither out of nor in the course of her employment. Rather it resulted from the unrestrained curiosity of the employee.

"'This does not mean, of course, that every time an employee deviates from his immediate employment in order to satisfy his curiosity and an injury occurs that he will be precluded from receiving compensation under the statute. If the deviation is trifling and momentary it should be disregarded like any other inconsequential act of turning aside. The deviation in the instant case, however, was not inconsequential." *Id.* at 201.

This case likewise does not present the same circumstances as were presented in *Pariser Bakery v. Koontz,* 239 Md. 586, 212 A. 2d 324 (1965) where the employee was injured on the public sidewalk in front of his employer's place of business after the completion of his day's work while proceeding from the employer's building to his automobile parked in a public street. We there held the employee not covered.

Where, as here, the claimant had arrived on the premises of her employer and was proceeding without deviation of any kind directly to her work, it would be unreasonable to hold that injuries sustained by her on the parking lot or between the building entrance and the time clock would be compensable, but injuries sustained between the parking lot and the building entrance would not be compensable. Therefore, we hold the injuries sustained by Mrs. DeBrick to have arisen out of and in the course of her employment.

*Judgment affirmed; costs to be paid by appellants.*