15334

JOHNSON v. MERCHANT'S FERTILIZER CO. *ET AL.*

(17 S. E. (2d), 695)

*Messrs. Moore & Mouzon,* of Charleston, for appellant,

*Mr. Irving Steinberg,* and *Mr. A. R. McGowan,* both of Charleston, for respondent,

December 1, 1941..

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

This claim for compensation under the Workmen's Compensation Act, Act July 17, 1935, 39 St. at Large, page 1231, arose out of the death of Willis Johnson, an employee of Merchants Fertilizer Company; he was killed in the company's fertilizer factory near Charleston on March 11, 1940. Liberty Mutual Insurance Company was the insurance car-

rier under the terms of the Act. The employer and the carrier denied liability upon the ground that Johnson's death did not arise "out of and in the course of the employment." It is contended that at the time of his death he was in a prohibited area, and in a place where he was forbidden to go.

The hearing commissioner awarded compensation which was approved by the full commission. This appeal is from an order of the Circuit Court affirming the award.

Willis Johnson, a Negro about 60 years of age, had been employed by the fertilizer company for four or five years prior to his death, in the mixing plant. About two weeks before the fatal accident his work as a mixer was discontinued, and on Saturday, March 9th, he was given employment as a sweeper on the second floor of the building.

The second floor of the mill runs the entire length of the building, 85 feet, and is 37 feet in width. This floor is pierced by two large rock bins and a dust hopper. Along the outer or open edge of the floor there runs horizontally, about two feet above the floor, a line shaft from which belts run to the rock bins. The shaft is about 65 feet long, starting at a point about six or eight feet from the end wall of the building, and it was on this end of the shaft that the accident occurred. About a foot from the line shaft on either side and about six inches above it, there is a guard rail made of 2 x 4 timbers, placed there for the protection of employees. Because the floor did not extend beyond the line shaft there was an open space running the length of the shaft from the second floor down to the first floor.

Johnson was put to work on Saturday sweeping up and collecting fertilizer dust which lay thick on the second floor. He had never worked on this floor before, and the general foreman, Mr. Bunch, went up with him for the purpose of instructing him as to his duties. He swept on the second floor on Saturday, and went back to sweep at seven o'clock on Monday morning, March 11th. Later in the morning, about nine o'clock, the foreman, Bunch, saw him at the

blacksmith shop on the mill yard getting a drink of water. About twenty minutes later he was killed on the drive shaft. His body was torn to shreds as it spun around the shaft, and the guard rails were shattered. There were no eyewitnesses to the accident.

The space leading to the point where the accident took place lies between the outside brick wall of the mill and what is described as rock bin No. 2, and the defendants contend that the deceased had been forbidden to go into this area.

The only testimony in the record is that of Mr. Bunch. He testified that on the Saturday before the accident he went to the second floor with Willis Johnson for the purpose of instructing him in his duties, and that on Monday morning, March 11th, which was the day of the accident, "I went by there * * * and warned him about the belt and the shaft, and not to go across to the belt and line shaft." From another place in his testimony we quote the following:

"Q. Did you or not tell him to sweep in the space between the rock bin and the wall of the building? A. Yes.

"Q. What about the space up here between the rock bin No. 2 and the brick wall at the end of the building, was he supposed to sweep in there? A. No, he did not have any business up there.

"Q. Did you say anything to him one way or the other about sweeping in there? A. No.

"Q. Did you tell him anything about where he was to go and where he was not to go? A. Yes, I told him to sweep this part here and not to go around the line shaft and belt."

A little further on Mr. Bunch testified: "Yes, I warned him about the line shaft and belt, not to go close to the line shaft or belt."

The burden was upon the defendants to establish the fact that at the time of Johnson's death he had gone into a prohibited place in violation of a positive or-

der. We do not think this burden has been successfully borne. So far as the record shows, the deceased had never been on the second floor of the company's mill until the Saturday before his death. It is reasonably inferable that he was unfamiliar with its physical environment and surrounding conditions, and more or less ignorant of the arrangement and disposition of the machinery and its dangers. Nor does it appear that he was ever clearly and specifically told not to enter the area between the brick wall and rock bin No. 2, which led to the end of the line shaft on that side of the room. In fact Mr. Bunch stated that he did not "say anything to him one way or the other about sweeping in there."

The appellants stress that portion of Mr. Bunch's testimony wherein he said that he warned Johnson "about the line shaft and belt, not to go close to the line shaft or belt," and his further testimony that the deceased was not supposed to do any sweeping between rock bin No 2 and the brick wall at the end of the building, and that there was nothing connected with his duties to take him in the area between the rock bin and the wall, or in the neighborhood of the shaft.

The word "close" is a relative term. The question naturally arises how close to the shaft was this ignorant and inexperienced Negro sweeper to venture before he approached too close so that it would amount to a violation of his instructions?

It will be borne in mind that Johnson was working upon an open floor space which was pierced by two cylindrical rock bins and a large dust hopper or bin. There was no actual line of division marked upon the floor beyond which he was forbidden to go. There was no barrier of any kind, only an imaginary unknown boundary which it is argued he would overstep at his own risk and peril. We think that it may reasonably be inferred that the warning given by the foreman to the deceased amounted to no more than a gen-

eral admonition to exercise due care when he reached the vicinity of the shaft. From the record before us the deceased could reasonably have inferred that the warning and instruction related far more to the shaft than to the actual floor space or area which he was to sweep.

Johnson was killed on the floor where he was actually at work as an employee of the fertilizer company, and any negligence on his part resulting in injury would not defeat his claim. The Workmen's Compensation Statute awards damages for injuries received in the line and scope of employment, and excludes from consideration as defeating an employee's claim any question of mere negligence on his part or assumption of risk.

We are satisfied that there was evidence before the Commission which justified the conclusion that the death of Willis Johnson arose "out of and in the course of the employment."

The rule is well stated in the case of *Employers' Liability Assurance Corporation v. Montgomery*, 45 Ga., App., 634, 165 S. E., 903, 904: "'An injury arises "in the course of employment," within the meaning of the Workmen's Compensation Act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An accident arises "out of" the employment, when it arises because of it, as when the employment is a contributing proximate cause.' These conditions must concur before the act can apply."

It is conceded that not every violation of an order given to a workman will necessarily remove him from the protection of the Workmen's Compensation Act. But appellants urge that when the workman disobeys an order affecting the scope of his employment he does so at his own peril. In support of this argument appellants cite the following doctrine from the case of *Great Atlantic & Pacific Tea Company v.*

*Industrial Commission,* 317 Ill., 596, 180 N. E., 460, 462, 83 A. L. R., 1208: "Certain rules concern the conduct of the workman within the sphere of his employment, while others limit the sphere itself. A transgression of the former class leaves the scope of his employment unchanged, and will not prevent the recovery of compensation, while a transgression of the latter sort carries the workman outside of the sphere of his employment and compensation will be denied."

The above excerpt from the Court's opinion expresses a well-recognized general rule, but we think under the circumstances in the case before us the rule is not applicable. Likewise, the facts in this case differentiate it from the numerous cases from other jurisdictions cited by appellants, among them *Jones v. Sloss-Sheffield Steel & Iron Company,* 221 Ala., 547, 130 So., 74; *Fournier's Case (Androscoggin Mills),* 120 Me., 236; 113 A., 270, 23 A. L. R., 1156; and *Gacesa v. Consumers' Power Company,* 220 Mich., 338, 190 N. W., 279, 24 A. L. R., 675. And see annotations, 23 A. L. R., 1161, 119 A. L. R., 1409, where many cases illustrative of the subject are collected.

It is suggested that there is no evidence that Johnson went to the place of his death for any purpose connected with his duties, it being in evidence that his broom or mop and his wheelbarrow were about 35 feet from him on the opposite side of the room, and that the dusty area between the rock bin and the brick wall near the shaft showed no signs of having been swept. We do not think this is conclusive. In the absence of any positive proof one way or the other, it is necessary to draw reasonable inferences and reach conclusions based on the conditions existing at the time, and the logical possibilities of what may have taken place leading up to the accident. As already stated, Johnson had never before been employed on the second floor of the mill. At the time of his death he was rightfully on that floor and could have been taking a view of the floor area to be swept; it

might be that he had approached the guard rail for the purpose of asking information in connection with his duties from the foreman or those working on the floor beneath him. It will also be kept in mind that there was no printed notice or other warning posted by the employer at or near the line shaft, nor anywhere on the wall of the room. The verbal admonition to which we have referred was all that the deceased had to guide him, and it may reasonably be inferred that those instructions lacked much of being clear and explicit.

We are of the opinion, upon a careful consideration of the record, that the judgment below should be affirmed.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and MR. ACTING ASSOCIATE JUSTICE G. DUNCAN BELLINGER concur.