19368

Jean SEXTON, Respondent, v. FREEMAN GAS COMPANY and Pan American Fire & Casualty Company, Appellants.

(187 S. E. (2d) 128)

*H. Carlisle Bean, Esq.,* of *Carlisle Bean & Hines,* Spartanburg, *for Appellant,*

*Messrs. James R. Turner* of Spartanburg, and *James M. Arthur,* of Union, *for the Respondent,*

February 15, 1972.

BRAILSFORD, Justice:

Carroll Sexton was killed at about 5:45 on the afternoon of May 2, 1969, when the truck he was driving was struck by a train at a grade crossing in the Town of Chesnee. His widow's claim for workmen's compensation benefits was allowed by the hearing commissioner, denied by the full Commission in a split decision, then reinstated by the circuit court. In this appeal by the employer and its insurer, the sole issue is whether the finding by the Industrial Commission that the fatal accident did not arise out of and in the course of employment is supported by evidence.

Freeman Gas Company's operation in Chesnee was conducted by three employees. Two of these—the bulk-truck

operator and the secretary—were paid an hourly wage. Carroll Sexton, who managed the business and was its service and installation mechanic, was a salaried employee. As manager, Sexton set his own schedule during the course of the day. Typically he arrived at the office around eight o'clock in the morning, and was in and out of the office thereafter depending upon the number of service calls received. Sexton's lunchtime came when the exigencies of business permitted, sometimes as late as three in the afternoon. Not infrequently his work lasted well past five, especially during peak periods of business. It was not unusual for him to be summoned at night or on weekends to attend the emergency needs of customers.

Sexton was free to use his employer's service truck in traveling between home and work. He did so during the winter when service demands were greatest, but not at other times of the year. On the spring day in question he had driven his own car to work.

At 4:30 on the day of his death, Sexton told Mrs. Haynes, the secretary, that he was going for a haircut, and would return as soon as possible. He then left the office driving the service truck which was equipped with a two-way radio over which calls for service could be transmitted.

A sizeable brushfire had been burning that afternoon on the outskirts of Chesnee. At about ten minutes past five, his haircut completed, Sexton left the barbershop and drove the truck to the scene of the fire. After assessing the blaze, which earlier had threatened a home containing a gas cylinder which Sexton himself had installed, he rendered a few minutes' assistance in the effort to extinguish the blaze, then departed on the shortest route leading back to the office. The collision occurred on this route.

The owner of the house endangered by the blaze testified that at one point the fire was within seventy-five or a hundred feet of it, and there was testimony that Sexton had checked previous fires in his territory to ascertain the safety

of his employer's tanks. Yet the Commission found his activity at this fire not to have been in the interest of his employer. Assuming that this finding is conclusive, it is not controlling on the question of scope of employment at the time of the accident, as the Commission seems to have assumed.

It has not been suggested that when Sexton departed his office for the barbershop in the company truck, he violated any condition of his contract of employment. On the contrary, the conclusion is unavoidable that the pattern of his managerial and service-installation activity, established by custom and necessity and impliedly accepted by his employer, left Sexton free to structure his time in any manner reasonably consistent with the successful operation of the enterprise placed in his charge. His hours of work were undefined and irregular; no certain place required his presence at a particular moment. He worked both in the office and out of it, according to the unpredictable demands of his customers, at any hour of day or night. His use of the service truck for travel within his territory was of benefit to his employer as well as to himself.

Sexton was killed while traversing the shortest route back to the office, where he expected to lock the service truck in his employer's fenced lot, and retrieve his own automobile, in which he planned to make an out-of-town trip that evening. At any moment of his fatal journey, he could have been diverted by the summons of the radio to whatever service his employer's customers required. We think it clear that while so occupied he was continuously subject to his employer's control; that his fixed salary impliedly compensated him for the time so spent; and the use of his employer's vehicle in such a manner was an incident of the employment contract and in the interest of his employer.

While we have found no case involving a similar employer-employee relationship, the principles evolved in dealing with certain analogous situations point to the conclusion

we have reached. For example, we have recognized that there are exceptions to the general rule of noncompensability for injuries sustained during the basic trip to and from work. These exceptions include cases where, "in going to and returning from work, the means of transportation is provided by the employer, or the time thus consumed is paid for or included in the wages," or where "the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment." *Gallman v. Springs Mills,* 201 S. C. 257, 263, 22 S. E. (2d) 715, 718 (1942). Similar exceptions generally obtain when the employee's travel to and from the premises occurs at lunchtime. 1 A. Larson, Law of Workmen's Compensation, Sec. 15.52 (1968).

Conceding that Carroll Sexton's presence in the vicinity of the brushfire was not in furtherance of his employer's interests, we nevertheless hold that, under the circumstances which have been related, when he left there and began traveling the shortest route back to the office, he resumed the course of his employment.

Affirmed.

Moss, C. J., and Lewis and Bussey, JJ., concur.

Littlejohn, J., dissents.

Littlejohn, Justice (dissenting):

I respectfully dissent from the opinion of Mr. Justice Brailsford, and would reverse the order of the circuit court.

Our cases are legion to the effect that the Industrial Commission is the trier of the facts. Neither the circuit court nor this Court should reverse the Industrial Commission on factual issues unless the evidence is susceptible of only one reasonable inference.

The basic question for determination by the Commission was: did Sexton's death arise out of and in the course of his employment? The Industrial Commission found as a matter of fact that it did not. In order to warrant the con-

clusion reached by the circuit court and the majority opinion, one must say that the claimant has proved her case not only by the preponderance of the evidence, but to the exclusion of all other reasonable inferences.

I am of the opinion that counsel for the respondent and the majority opinion misstate the question involved. The respondent submits that the question is: ". . . is the claimant entitled to the application of the principle of law, that where an employee is found dead at a time and place 'Where his employment reasonably required him to be, there is a presumption of fact that the death arose out of and in the course of the employment.' " The question presupposes that the employee was where his employment required him to be. If he was, under the facts of this case, the presumption is not needed.

The majority opinion submits the question to be: "whether the finding by the Industrial Commission that the fatal accident did not arise out of and in the course of employment is supported by evidence."

The burden of proof was on the claimant to show that the death arose out of and in the course of employment. Defendant, in order to prevail, did not have to prove anything. Neither the circuit judge's order nor the majority opinion points out any evidence which entitles the claimant to recover as a matter of law. The fact that evidence is not disputed does not always mean that only one reasonable inference is created. Reasonable persons can and often do interpret the same evidence in a different way.

While the circuit judge and the majority opinion do not point out evidence warranting the conclusion reached, the Industrial Commission does concretely point out factually the basis of its findings. The Commission said:

"From a careful consideration of the evidence, we conclude that there is neither direct nor circumstantial evidence sufficient to carry the burden of proof. The most that can be said is that the deceased employee was killed while driv-

ing his employer's truck, but the record is totally bare of any direct proof that he was engaged in his employer's business. In fact, the evidence is positive that shortly before the accident, the deceased employee was attending to personal matters, having driven his employer's truck to the barbershop, where he got a haircut.

"The only evidence which even tends to show that he might have been on his employer's business is that he went to a brush fire in the country in the vicinity of which was a bottle gas tank at a residence. There is no evidence whatsoever to show that the deceased employee went near or to this tank, and there is positive evidence to show that his truck was parked about four-tenths of a mile from the small tank and that he was with the volunteer firemen in the field where the fire was burning, a considerable distance from the house where the tank was located. We conclude that there was no evidence that the deceased employee frequently checked on tanks belonging to his employer in the general vicinity of fires, although there is an inference that he may have done this on rare occasions. It is our opinion that the circumstances surrounding this occurrence are, in fact, such as to lead to the reasonable inference that the employee was not fulfilling or engaged in doing anything incidental to his duties and, consequently, his death did not arise out of and in the course of his employment.

"Accordingly, the Commission has concluded that the Hearing Commissioner was in error in awarding compensation to the claimant, there being a failure to meet the burden of proof. The Commission, in fact, has come to the conclusion that the preponderance of the evidence is in favor of the defendants and that the deceased employee was not engaged in doing anything in connection with the duties of his employment at the time of the accident."

The majority opinion, in the last paragraph, concedes that the deceased was not at the brush fire in furtherance of his employer's interests. It concludes, however, that when he started back toward his place of employment, the em-

ployment was resumed. Overlooked is the fact that it is shown by the evidence that at the time of the unfortunate death he had not re-entered the area or sphere of his employment. It can only be said that he went to the fire to satisfy his own curiosity and perhaps help with the fire, and had not at the time of his death returned to his job.