## 19936

David L. HINES, Appellant, v. HENDRICKS CANNING
COMPANY, and U. S. Fire Insurance Company, Respondents

(211 S. E. (2d) 220)

*Messrs. Abrams, Bowen, Hagins & Robertson,* and *Mc-Donald, Cox & Stilwell,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondents,*

January 8, 1975.

BUSSEY, Justice:

This is a workmen's compensation case wherein an injured employee appeals from an order of the circuit court reversing a compensation award of the Industrial Commission. At least tangentially there is involved the question of the sufficiency of the evidence to support the factual findings of the Commission and for this reason the facts are

stated in the light most favorable to the claimant in accordance with the well established rule.

The claimant, a 16-year-old boy, was injured on August 5, 1972, when both of his hands were caught in machinery with the result of quite serious injuries to his left hand and somewhat less severe injuries to his right hand, there being permanent injury to both. Immediately following such injuries Dr. Bowick, a general surgeon, performed surgery on both hands and continued to attend him until January 15, 1973, at which time he referred the claimant to Dr. William Eckstein, whose speciality is that of plastic and reconstructive surgery. In February, 1973, Dr. Eckstein performed surgery to free the joints of the ring and little fingers of claimant's left hand. He proposed to do thereafter further reconstructive surgery upon the left hand. He considered it possible, if not probable, that more than one further operation would be required and anticipated that it would be 12-18 months, after March 16, 1973, before the maximum rehabilitation of claimant's left hand was attained.

At the time of his injury claimant had finished his sophomore year in high school. He had worked during the summer of 1971 and part-time during a portion of the 1971-72 school year. He returned to high school in the fall of 1972 as a junior and had planned to work part-time throughout that scholastic year, but was unsuccessful in obtaining employment because of his disability, except for one week when he worked at a job which he found he could not do in comfort because of the condition of his left hand. In November, 1972, a representative of the carrier received an erroneous report to the effect that claimant was engaged in playing football on his high school team. It is reasonably inferable that such report was the genesis of the controversy which is now before us.

In any event on November 30th the carrier applied to the Industrial Commission for permission to stop payment

of compensation for temporary total disability to the claimant on the grounds that,

"1. Employee's job was seasonal and is no longer available.

"2. Employee is presently a full-time student and not available for employment if job existed."

There was no contention that the claimant's total disability had in fact ceased or that he had reached maximum medical recovery. If there be any authority for terminating compensation on the grounds asserted by the carrier, such has not been called to our attention, but on December 15th an order was issued by the Commission authorizing the carrier to terminate compensation effective November 15, 1972.

Thereafter there was filed on behalf of claimant a request for a hearing in the matter, which was held by a Commissioner in Pickens, South Carolina on May 17, 1973. The Commissioner found as a fact that the claimant had been physically unable to work since the time of his injury, except for one week; that he had not reached maximum medical recovery and that he was entitled to further medical care and treatment which would tend to reduce the extent and period of the claimant's disability. He also found that determination of permanent disability and disfigurement would be premature and as to this latter all parties seem to be in agreement. His award revoked the order of the Commission which had granted the employer-carrier the right to stop benefits as of November 15, 1972, they being ordered to resume payment of weekly compensation until such time as it was shown that the claimant's total disability had ceased, but with the employer-carrier taking credit for the one week in which the claimant had actually been employed. Further medical expenses were also awarded and claimant's entitlement to such is not challenged.

The award of the hearing Commissioner was unanimously affirmed by the full Commission, but on appeal to the circuit court such award was reversed.

While the order of the circuit court does not purport to expressly reverse any of the findings of fact by the full Commission, some of the language therein contained appears to be at variance with the findings of fact by the Commission. As to such it is only necessary to state that the findings of fact by the Commission are quite fully supported by the evidence. It follows that any factual content of the circuit court decree which is at variance with the findings of fact by the Commission is erroneous.

It was the conclusion of the circuit court that the award of the Industrial Commission had to be reversed upon the authority of *Singleton v. Young Lumber Company,* 236 S. C. 454, 114 S. E. (2d) 837. In our view the *Singleton* case is clearly distinguishable from the instant case and not at all controlling. There a claimant lost a leg as the result of an injury sustained on August 16, 1956. He was paid compensation for total disability until July 15, 1957, when the employer-carrier stopped payment of compensation after receiving a report from the attending physician that the claimant had been released from further medical treatment as having reached maximum medical improvement. There was no contention in the *Singleton* case that the claimant was not entitled to compensation for temporary total disability until such time as he reached maximum improvement. The controversy was simply whether having reached maximum improvement, he was thereafter entitled to an award for permanent total disability instead of a specific award for the partial loss of a leg. The holding of this Court was that his award for permanent injury, or disability, had to be calculated on the basis of an injury to a scheduled member of the body pursuant to Code Section 72-153.

In the instant case the employer-carrier, *contra* to what was done in *Singleton,* are attempting to stop the payment of compensation for temporary total disability prior to the claimant reaching maximum medical

improvement. Admittedly, not until that time, can his degree of permanent disability based upon damage to scheduled members be ascertained. Except for a few jurisdictions where the matter is specifically covered by statute, the employer-carrier's contention would appear to be a novel one. Larson's Workmen's Compensation Law at Section 58.15 says that under the commonest type of statute, in force in twenty-nine states, the scheduled award is added to the allowance for temporary total disability, but that "in five states compensation for temporary total disability is deducted from the allowance for scheduled injury."

Highly persuasive, if indeed not controlling in the decision of this case, is the North Carolina case of *Rice v. Denny Roll & Panel Co.*, 199 N. C. 154, 154 S. E. 69 (1930). In that case it was held that the injured employee was entitled to be compensated for total incapacity during the healing period in addition to the amount allowed for the loss of a specific member. We quote from the opinion in that case the following, we think, rather pertinent language,

"The General Assembly seems to have considered with care the provisions of section 31. In some of the states the compensation for loss or injury for some member is 'in lieu of all other compensation.' Section 32 of the original Cannady-Haywood Senate Bill, No. 83, on file in the secretary of state's office, file No. 526, reads: 'In cases included by the following schedule, the incapacity in each case shall be deemed to continue for the period specified, and the compensation so paid for such injury shall be specified therein, and shall be in lieu of all other compensation.' Section 31 in the Compensation Law, as finally adopted, which corresponds to section 32 of the original bill, reads: 'In cases included by the following schedule, the disability in each case shall be deemed to continue for the period specified, and the compensation so paid for such injury shall be specified therein, to-wit: "For the loss of" specifying the par-

ticular members, etc. The General Assembly left out of the clause, "and shall be in lieu of all other compensation." ' " Section 31 of the North Carolina act is the counterpart of our Code Section 72-153.

It is a matter of common knowledge that our Workmen's Compensation Act was fashioned upon that of North Carolina and we have repeatedly held that the opinions of the Supreme Court of North Carolina construing such act are entitled to great weight. See *Flemon v. Dickert-Keowee, Inc.,* 259 S. C. 99, 190 S. E. (2d) 751, and the cases therein cited. Our Workmen's Compensation Law originated with an act approved July 17, 1935 (1936 [39] 1231) five years after the decision of the North Carolina Supreme Court in the *Rice* case above cited.

In *Fuller v. South Carolina Tax Commission,* 128 S. C. 14, 121 S. E. 478, it was held as follows,

"Where the language incorporated into a statute is identical or substantially identical with that appearing in similar statutes of other states which have received judicial construction and interpretation prior to the adoption of the statute under consideration, in the absence of an expressed intention to the contrary it will be presumed that the subsequently enacted statute was intended to be understood and applied in accordance with the construction given it by the courts of the states which had first adopted it. 25 R. C. L. 1069-1071; *Simpson v. Willard,* 14 S. C. 191."

See also *Fulghum v. Bleakley,* 177 S. C. 286, 181 S. E. 30; *Flemon v. Dickert-Keowee, Inc., supra.* We find nothing in our act to evince an intention on the part of the legislature that the particular code sections pertinent to this case were to be given any construction contrary to the construction thereof by the North Carolina Supreme Court. Additionally, it is, of course, well settled that our Workmen's Compensation Act is remedial legislation which is entitled to a liberal construction in

order to accomplish the ends and purposes for which it was enacted. It is also settled that one of the obvious, primary purposes was to prevent injured employees, or those lawfully dependent upon them from becoming charges upon society and the public generally for support. See numerous cases collected in West's South Carolina Digest, Workmen's Compensation, Key No. 11. The employer-carrier's contention that the claimant, even thouph totally incapacitated, is not entitled to compensation for temporary total disability, under the circumstances of this case is a result which we are satisfied the General Assembly never intended.

Two additional sustaining grounds are urged by the employer-carrier; first that the claimant's return to school on a full-time basis removed him from the labor market and hence his attendance at school rather than any injury resulted in his being unemployed; and second, the Commission failed to make a sufficient finding of fact concerning loss of earning capacity sustained in view of the undisputed fact that his school activities, aside from any injury or disability would render him available for part-time work only. No authority is cited for either of these contentions and we are unaware of any such.

The judgment below is reversed and the cause remanded for entry of a decree affirming the award of the Industrial Commission.

Reversed.

Moss, C. J., Lewis and Littlejohn, JJ., and J. B. Ness, Acting Associate Justice, concur.