2137

Earl WRIGHT, Deceased, Alice Wright, Widow, Appellant v. BI-LO, INC., Employer, and Self-Insured, Carrier, Respondents.

(442 S.E. (2d) 186)

Court of Appeals

*William H. Ehlies*, Greenville, *for appellant.*

*William E. Shaughnessy* and *Melissa Miller Anderson*, of *Haynsworth, Marion, McKay and Guerard*, Greenville, *for respondents.*

Submitted Jan. 11, 1994.

Decided Feb. 22, 1994. Reh. Den. Apr. 21,1994.

GOOLSBY, Judge:

This is a workers' compensation case. Earl Wright was forty-eight years old and worked as a courtesy clerk at Bi-Lo, Inc. His principal duty was bagging groceries, but he died of a heart attack while pursuing a suspected shoplifter. The Full Commission denied compensation, finding his pursuit of the suspected shoplifter was outside the course and scope of his employment and in direct and intentional violation of a specific and express policy against pursuing or detaining shoplifters. The Circuit Court affirmed. On appeal, Wright's widow challenges this ruling, the exclusion of certain evidence as hearsay, and the admission of other evidence. We affirm.[1]

Bi-Lo had a specific policy regarding employee involvement in the detection and prevention of shoplifting, as well as the apprehension of suspected shoplifters. Hourly wage earners, including Wright, were prohibited from approaching or apprehending suspected shoplifters. Their role was limited to observing suspected shoplifters and reporting their suspicions to management. From that point on, management had the sole authority and responsibility for approaching and apprehending suspected shoplifters. The purpose of this policy was twofold: to protect the store from potential liability for the acts of its employees and to protect its employees from personal injury.

Wright died on Monday, August 19, 1991. On the Tuesday

---

[1] Because oral argument would not aid the court in resolving the issues, we decide this case without argument.

before his death, Wright confronted a suspected shoplifter and became involved in a heated argument with him. The store manager took Wright to the side and told him never again to confront or attempt to apprehend a suspected shoplifter. He told Wright his role was limited to reporting suspected shoplifters to management. Wright responded by asking whether he should "clock out." The store manager said no, but again told him to adhere to the rules on shoplifters.

On the Friday before his death, Wright became suspicious of some customers who asked him about an out-of-stock item. He reported his suspicions to his immediate supervisor, the customer service manager. Upon inquiry, he told the service manager he had not actually seen the customers conceal the item or walk out of the store with it. The service manager said there was nothing they could do about it under those circumstances.[2] As the service manager turned around, Wright went out the door in apparent pursuit of the suspected shoplifters. The service manager went outside and told Wright he was never to chase a suspected shoplifter. He also told Wright his role was limited to observing suspected shoplifters and reporting his suspicions to management.

On the day of Wright's death, the customer service supervisor (not the same person as the customer service manager) observed a customer leaving the store with some meat. He called security on the microphone and walked outside, where he observed the customer running in the parking lot. Wright came outside behind him, and the supervisor told him to go back inside. Wright refused, stating that he was "going after" the fleeing suspect. The supervisor told him "no," and again told him to go back inside. Wright jumped on his moped and gave chase.

As Wright headed out on his moped, the customer service manager came outside. He began waving his arms and screaming at Wright to go back inside the store. Wright ignored him and continued the chase. Four hours later, Wright was found lying by his moped, dead of a heart attack.[3]

---

[2] The store's shoplifter policy limited confrontation and apprehension by its management employees to the "last point of sale" (the cash register). If the suspected shoplifter got out the door, not even the management employees chased them.

[3] The precise circumstances of Wright's death are unknown, there being no evidence in the appellate record. It is unknown whether Wright ever caught

## COURSE AND SCOPE OF EMPLOYMENT

The question of whether an accident arises out of and is in the course and scope of employment is largely a question of fact for the Full Commission. *Grice v. National Cash Register Co.*, 250 S.C. 1, 156 S.E. (2d) 321 (1967). Our review of factual issues is limited to whether substantial evidence supports the decision of the Full Commission. *Hunter v. Patrick Constr. Co.*, 289 S.C. 46, 344 S.E. (2d) 613 (1986).

The controlling question in the present case is whether Wright stepped outside the scope of his employment by violating the store's rules on shoplifters. Our Supreme Court has succinctly stated the applicable law on this question:

> [N]ot every violation of an order given to a workman will necessarily remove him from the protection of the Workmen's Compensation Act. . . . "Certain rules concern the conduct of the workman within the *sphere of his employment,* while others *limit the sphere itself.* A transgression of the former class leaves the scope of his employment unchanged, and will not prevent the recovery of compensation, while a transgression of the latter sort carries the workman outside of the sphere of his employment and compensation will be denied."

*Johnson v. Merchants Fertilizer Co.*, 198 S.C. 373, 378-379, 17 S.E. (2d) 695, 697-698 (1941) (citations omitted) (emphasis added).[4] When an employer limits the sphere of employment by specific prohibitions, injuries incurred while violating these prohibitions are not in the scope of employment and, therefore, not compensable. *Black v. Town of Springfield*, 217 S.C. 413, 60 S.E. (2d) 854 (1950). Here, the substantial evidence establishes Wright left the sphere of his employment by violating the specific orders not to confront, pursue, or apprehend suspected shoplifters.

---

up with the fleeing suspect or, if so, whether Wright died during a struggle with the suspect. For purposes of our decision here, we assume Wright's heart attack would have been a compensable accident had it arisen within the course and scope of his employment.

[4] We note wright's widow concedes that *Johnson* states the controlling law in this case.

Wright's widow points out that Wright had been "instructed to take *prescribed* measures to prevent shoplifting." She argues his pursuit of the shoplifter was a *"method* of accomplishing" this duty of employment rather than an "attempt to *extend* those duties." (Emphasis added.) The "prescribed" measures, however, specifically excluded *and* prohibited the "method" of confronting, pursuing, or apprehending suspected shoplifters. These rules went beyond limiting Wright's "conduct within the sphere of his employment," they limited "the sphere itself." The sphere of confrontation and apprehension belonged solely to management.[5]

Wright's widow relies heavily on South Carolina cases wherein compensation was allowed despite evidence that the employee had violated rules set down by the employer. In *Johnson,* 198 S.C. 373, 17 S.E. (2d) 695, the employee was found dead in an allegedly prohibited area. In affirming the award of compensation, the Supreme Court repeatedly noted there was conflicting evidence on whether the employer had given "clear and explicit" orders on not going into this area. In *Portee v. South Carolina State Hosp.,* 234 S.C. 50, 106 S.E. (2d) 670 (1959), the employee died from anaphylactic shock caused by an injection given him by a fellow employee, who was a nurse. In affirming the award of compensation, the Supreme Court noted there was no evidence that the employee knew of any prohibitions against this conduct.[6]

*Johnson* and *Portee* are easily distinguished. In those cases,

---

[5] Although not argued specifically by Wright's widow, we do not overlook the general rule allowing compensation where an employee performs acts outside his duties but within the duties of a fellow employee. *See* 1A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 27.11 (1993). Here, the acts undertaken by Wright were not within the duties of any fellow employee, it being the store's policy that not even managing employees would chase suspects outside the store. More importantly, this general rule does not apply where, as here, the employee has received specific instructions not to undertake performance of a fellow employee's duties. *Id.* at § 31.14(a).

[6] The Court observed there was some evidence that the nurse knew of a rule prohibiting her from giving injections to anyone absent orders from a doctor. The Court held the nurse's knowledge was not determinative, because violation of rules by fellow employees was as much a risk of employment as was defective machinery. We note that this distinction remains viable today. *See Jones v. Hampton Pontiac,* 304 S.C. 440, 405 S.E. (2d) 395 (1991) (where employee is injured by "horseplay" of his fellow worker, the injury is compensable; but where the employee injures himself during his own horseplay, the injury is not compensable).

the Commission found the injuries compensable under conflicting evidence at a time when appellate review was limited to whether "any evidence" supported the Commission's factual decisions. Here, the Commission found the injury was *not* compensable, and substantial evidence supports its conclusion. More importantly, the present case establishes the existence of "clear and explicit" orders repeatedly communicated to Wright and clearly violated by him in the events leading to his death.[7]

The Supreme Court's decision in *Black*, 217 S.C. 413, 60 S.E. (2d) 854, is far more analogous. There, the police chief fell to his death from a speeding fire truck. Although the police admittedly had some duties pertaining to the fire department's response to fires, such as directing traffic at fires and assisting in connecting fire hoses, the police chief had received specific instructions never to ride on the fire truck. Indeed, as here, he again received these specific instructions just as he was getting on the truck for the last time, but he ignored them. Under these facts, and applying the "any evidence" standard of review, the Supreme Court reversed the Commission's award of compensation. The Court held that, as a matter of law, the police chief's "injury was brought about through his own acts which were not only wholly without the scope of his *employment but had been expressly forbidden by his employers.*" 217 S.C. at 422, 60 S.E. (2d) at 858 (emphasis added). If a police chief's injuries from riding on a fire truck are not compensable as violative of an express prohibition, even though he has legitimate employment duties at the fire truck's ultimate destination, a courtesy clerk's specifically forbidden act of pursuing a fleeing shoplifter cannot be within the scope of his employment.[8]

---

[7] We note that the employee's knowledge of work rules continues to be a critical factor in these types of cases. See *Davis v. By-Pass Auto Parts, Inc.*, 304 S.C. 75, 403 S.E. (2d) 133 (Ct. App. 1991) (substantial evidence supported finding that, if there was a company policy violated by the acts leading to the employee's death, the employee was unaware of the policy).

[8] Professor Larson describes *Black* as the "tenderest and saddest story" in the group of cases denying compensation to claimants who violate a specific order, even where the employee's act arguably furthers the employer's interest and fulfills the duties of a fellow employee. 1A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 31.14(a) (1993). He describes the police chief as a "victim of his unconquerable passion for riding on fire trucks." *Id.* Here it appears Wright was a victim of his "unconquerable passion" for police work.

Wright's widow also relies on the Supreme Court's decision in *Howell v. Kash & Karry*, 264 S.C. 298, 214 S.E. (2d) 821 (1975). There, the Court affirmed an award of compensation to a grocery store bag boy who injured himself while chasing someone who had snatched a purse from a potential customer outside the store. The superficial similarity to the present case is not controlling.

In *Howell*, the Court held that a good-faith act outside the employee's regular duties is compensable if undertaken to advance the employer's interest, even if the act does not further the employee's assigned tasks. The Court emphasized that recovery of the customer's money, thereby enabling her to spend it in the store, furthered the employer's interest. The Court also emphasized the customer goodwill created by the bag boy's act.[9]

The present case is easily distinguished from *Howell*. Here, there is no third party being protected and no resulting goodwill. Wright's act was not in "good faith" because it was an act in direct violation of specific orders from the employer. Most importantly, there is no indication in *Howell* that the employer had specifically prohibited the bag boy from chasing purse snatchers, shoplifters, or any other type of fleeing criminal suspect.

In her final argument, Wright's widow asserts the store "encouraged" Wright's activity by failing to enforce its rule when he violated it. Recognizing that the store had "chastised" her husband, she contends the failure to take more punitive measures demonstrated "tolerance" rising to the level of "acquiescence." Her argument is manifestly without merit, as is her reliance on *Compton v. Town of Iva*, 256 S.C. 35, 180 S.E. (2d) 645 (1971).

In *Compton*, the employee was acting in compliance with a well-known and long-established policy of the employer that permitted its employees to act outside the scope of their regular duties. Moreover, immediately prior to the employee's death, the employer knew the employee was acting pursuant to this policy and did not object to it. In this case, the evidence

---

[9] Professor Larson cites *Howell* as one of the leading cases on this "goodwill" theory for allowing compensation. 1A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 27.22(a), 5-374 nn. 63.1-63.2 and accompanying text (1993); *see also id.* at 5-365 to 5-369 n. 52.

does not compel a finding of tolerance rising to the level of acquiescence. Here, as with the police chief in *Black*, 217 S.C. 413, 60 S.E. (2d) 854, the employer told Wright not to violate the rule every time it learned of a violation. Moreover, Wright's "clock out" question in response to the store manager's earlier "chastisement" for violating the shoplifter rules demonstrates the seriousness of the manager's reprimand and Wright's understanding of it.

## EXCLUSION OF EVIDENCE

At the hearing before the single commissioner, Wright's widow and daughter sought to testify regarding statements by Wright. The employer objected on the grounds of hearsay. The widow's attorney responded the testimony was relevant to Wright's state of mind, that is, his understanding of the employer's policy on shoplifters. The single commissioner allowed a proffer of the testimony, subject to his ruling at a later time. The commissioner subsequently held the proffered testimony was inadmissible hearsay. The Full Commission and the Circuit Court affirmed this ruling.

We conclude the excluded evidence was hearsay because it was offered for the truth of the matter asserted. On appeal, Wright's widow argues her testimony and that of her daughter was admissible to show Wright's understanding of the employer's shoplifter rules, an apparent reliance on a "state of mind" exception to the hearsay rule. This is an impermissible bootstrap argument. Unless it was true that Wright had participated in apprehending shoplifters and had been commended by the employer for his actions, there is no merit to the widow's "understanding" argument. Moreover, assuming there was error, we concur in the Circuit Court's alternative ruling that any error was harmless, albeit on a slightly different basis. *See* Rule 220(c), SCACR (appellate court may affirm on any ground appearing in the record).

The proffered testimony related to events occurring at a different store prior to Wright's employment at the store involved in the present case. Wright told his wife and daughter he had been commended by management for his efforts in helping catch two or three shoplifters. Neither witness testified about the circumstances of Wright's involvement in these incidents. In particular, they did not know whether he simply

reported suspicious persons to his supervisor, or whether he was involved in the actual apprehension of the suspects. As a result, there is no showing that Wright's "commended" acts were in violation of the employer's shoplifter policy, thereby bolstering the contention that he was acting in compliance with an understanding of his job duties. More importantly, assuming these prior events involved actual apprehension activity by Wright, he had been positively and repeatedly instructed thereafter not to do so at the new store. Thus, at the time of his death, Wright was knowingly and intentionally acting in direct contravention of specific instructions on the scope of his employment.

## ADMISSION OF EVIDENCE

Wright's widow argues the single commissioner erred in allowing the employer's witnesses to testify as to statements made by Wright. She does not argue these statements were inadmissible. In fact, her grounds of appeal to the Full Commission and the Circuit Court conceded the statements were admissible. She contends, however, the single commissioner erred in admitting this testimony after excluding the testimony from her and her daughter. We disagree.

Wright's responses, as related by the employer's witnesses, were not offered to prove the truth of the matter asserted. Indeed, the truth of his responses was irrelevant. The important truths at issue were that the managers told the employee about the store's shoplifter rules and that he responded in a manner that indicated he heard them. Neither of these matters is hearsay.

As noted earlier, there is no argument that the testimony from the employer's witnesses was inadmissible. The only argument is that the testimony of Wright's widow and daughter was equally admissible. Their testimony, however, was inadmissible hearsay, and any error in excluding it was harmless.

Affirmed.

BELL and CONNOR, JJ., concur.