577 S.E.2d 475

**Richard PRATT, Claimant/Appellant,**

v.

**MORRIS ROOFING, INC., Employer, and Transportation Insurance Company, Carrier, Respondents.**

**No. 3591.**

Court of Appeals of South Carolina.

Heard Dec. 11, 2002.

Decided Jan. 21, 2003.

Rehearing Denied March 20, 2003.

---

2. We affirm on these grounds; therefore, we need not address the remaining issue on appeal.

Darrell Thomas Johnson, Jr., of Hardeeville; and R. Thayer Rivers, Jr., of Ridgeland; for Appellant.

W. Hugh McAngus, of Columbia; for Respondents.

ANDERSON, J.

In this Workers' Compensation case, Richard Pratt appeals the Circuit Court's affirmance of the Workers' Compensation Commission's order denying him benefits. The Commission found Pratt did not sustain an injury arising out of and in the course of his employment. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Richard Pratt was employed by Morris Roofing, Inc., a roofing and subcontracting business co-owned by Paul Morris

and Ray Morris. Pratt was involved in a single-vehicle collision while driving a Morris Roofing truck to work on May 11, 1999, from his home in Savannah, Georgia, to his job location in Hilton Head.

Morris Roofing provided transportation to its employees in company trucks and vans. The employer charged the employees thirty-five dollars per week for this transportation, whether they rode in a work van or drove a company truck.

Before the accident, Pratt occasionally drove a Blazer owned by Morris Roofing. Because Pratt had been arriving late to work, Paul Morris had a conversation with Pratt on May 10, 1999, and specifically forbade him from taking the company vehicle home. Paul instructed Pratt to deliver the vehicle to another employee, Tony Wilson, after Pratt completed the job he was working on that day. Paul informed Pratt that Wilson would then drive Pratt home and bring him back to work the next day. Wilson overheard the colloquy between Pratt and Paul Morris and verified the conversation occurred. Wilson stated he waited with the construction crew for over two hours for Pratt to appear but he never showed up.

According to Ray Morris, Pratt advised him that Paul had prohibited Pratt from taking the vehicle home. Pratt asked Ray to overrule Paul's directive, but Ray refused to do so.

Despite contrary instructions from Paul Morris, which were then buttressed by Ray Morris, Pratt drove the company vehicle home the night of May 10, 1999. He was injured in a single-vehicle accident the next day as he returned to work.

Melanie Adams, a claims specialist with CNA Insurance Company, met with Pratt at his apartment the day he was released from the hospital. Adams declared Pratt admitted he was not supposed to take the vehicle home the night before the accident but decided to take it home anyway against Paul Morris' instructions.

Pratt testified that he was not forbidden to take the truck home, but merely instructed not to take it home if he could not arrive at the job site on time.

Pratt alleged he sustained a compensable injury in the accident. The Single Commissioner ruled the injury did not

arise out of and in the course of Pratt's employment. The Commissioner found (1) Pratt knowingly violated his employer's instructions not to take the company vehicle home and (2) the transportation was not provided by the employer because Pratt was required to pay for it. The Full Commission,[1] by unanimous vote, affirmed the Commissioner's findings. The Circuit Court affirmed the Full Commission.

## STANDARD OF REVIEW

Judicial review of a Workers' Compensation decision is governed by the substantial evidence rule of the Administrative Procedures Act. *Gray v. Club Group, Ltd.,* 339 S.C. 173, 528 S.E.2d 435 (Ct.App.2000); *Lake v. Reeder Constr. Co.,* 330 S.C. 242, 498 S.E.2d 650 (Ct.App.1998). In an appeal from the Commission, this Court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Gibson v. Spartanburg Sch. Dist. No. 3,* 338 S.C. 510, 526 S.E.2d 725 (Ct.App.2000); *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996); S.C.Code Ann. § 1–23–380(A)(6)(d) (Supp. 2001); *see also Etheredge v. Monsanto Co.,* 349 S.C. 451, 562 S.E.2d 679 (Ct.App.2002) (stating court may reverse or modify Commission's decision if substantial rights of appellant have been prejudiced because administrative findings, inferences, conclusions or decisions are affected by other error of law). This Court's review is limited to deciding whether the Commission's decision is unsupported by substantial evidence or is controlled by some error of law. *See Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981); *see also Lyles v. Quantum Chem. Co. (Emery),* 315 S.C. 440, 434 S.E.2d 292 (Ct.App. 1993) (in reviewing decision of Workers' Compensation Com-

1. We use the term "Full Commission" to indicate the review of the Single Commissioner's order pursuant to § 42–17–50 (Supp.2001). The regulations promulgated by the Workers' Compensation Commission and approved by the South Carolina Legislature provide for an Appellate Panel review. *See* 25A S.C.Code Ann. Regs. 67–709A (1989) ("Commission review may be conducted by a three or six member review panel either of which excludes the original Hearing Commissioner. An order of a three member review panel has the same force and effect as a six member review panel and is the final decision of the Commission.").

mission, Court of Appeals will not set aside its findings unless they are not supported by substantial evidence or they are controlled by error of law).

Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Etheredge*, 349 S.C. at 456, 562 S.E.2d at 681–82; *Broughton v. South of the Border*, 336 S.C. 488, 520 S.E.2d 634 (Ct.App. 1999). The Appellate Panel is the ultimate fact finder in Workers' Compensation cases and is not bound by the Single Commissioner's findings of fact. *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999). The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel. *Shealy v. Aiken County*, 341 S.C. 448, 535 S.E.2d 438 (2000); *Parsons v. Georgetown Steel*, 318 S.C. 63, 456 S.E.2d 366 (1995); *Gibson*, 338 S.C. at 517, 526 S.E.2d at 729. The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 541 S.E.2d 526 (2001); *Hicks v. Piedmont Cold Storage, Inc.*, 335 S.C. 46, 515 S.E.2d 532 (1999). It is not within our province to reverse findings of the Commission which are supported by substantial evidence. *Broughton*, 336 S.C. at 496, 520 S.E.2d at 637.

## *LAW/ANALYSIS*

### I. Sphere of Employment

Pratt argues the Commission erred in finding that his injuries did not arise out of and in the course of his employment. Pratt contends he was acting within the scope of employment even though he had been instructed not to drive the vehicle. We disagree.

This Court, in *Wright v. Bi–Lo, Inc.*, 314 S.C. 152, 442 S.E.2d 186 (Ct.App.1994), articulated:

Our Supreme Court has succinctly stated the applicable law on this question:

> [N]ot every violation of an order given to a workman will necessarily remove him from the protection of the Workmen's Compensation Act.... "Certain rules concern the conduct of the workman within the *sphere of his employment,* while others *limit the sphere itself.* A transgression of the former class leaves the scope of his employment unchanged, and will not prevent the recovery of compensation, while a transgression of the latter sort carries the workman outside of the sphere of his employment and compensation will be denied."
>
> *Johnson v. Merchant's Fertilizer Co.,* 198 S.C. 373, 378–379, 17 S.E.2d 695, 697–698 (1941) (citations omitted) (emphasis added). When an employer limits the sphere of employment by specific prohibitions, injuries incurred while violating these prohibitions are not in the scope of employment and, therefore, not compensable. *Black v. Town of Springfield,* 217 S.C. 413, 60 S.E.2d 854 (1950).

*Wright,* 314 S.C. at 155, 442 S.E.2d at 188 (footnote omitted).

In *Wright,* the employee and all hourly wage earners were prohibited from approaching or apprehending suspected shoplifters. Wright ignored this rule. The Court found that "Wright left the sphere of his employment by violating the specific orders not to confront, pursue, or apprehend suspected shoplifters." *Id.* He was thus not entitled to Workers' Compensation benefits.

Pratt invites the Court's attention to *Howell v. Kash & Karry,* 264 S.C. 298, 214 S.E.2d 821 (1975). In *Howell,* the Court affirmed an award of compensation to a grocery store bag boy who injured himself while chasing someone who had snatched a purse from a potential customer outside the store. The Court held that a good faith act outside the employee's regular duties is compensable if undertaken to advance the employer's interest, even if the act does not further the employee's assigned tasks. Acts furthering the employer's interest were identified: (1) recovery of the customer's money, thereby enabling her to spend it in the store; and (2) the customer good-will created by the bag boy's act. Most importantly, there is no indication in *Howell* that the employer had specifically prohibited the bag boy from chasing purse snatchers, shoplifters, or any other type of fleeing criminal suspect.

In the present case, the testimony reveals Pratt was acting against specific orders from his employer. During direct examination, Paul Morris stated:

Q. So, [Pratt] drove it home at least on the 9th and he drove it to Moss Creek on the 10th?

A. Yeah. Well, the 9th—on the 10th, the day before the accident, he—the homeowner called me. [Pratt] wasn't there. They told me he was going to be there at a certain time and he didn't get there on time. So, when he went and had communications with me, I told him that he couldn't drive the truck home because he was late to the job.

Q. All right.

A. That ended that conversation about the truck.

. . .

Q. And the—what time did he leave Moss Creek [that night]?

A. I couldn't tell you the time he left Moss Creek. I told him to come to Sea Pines that—to meet the guys and Tony would take him home and he came and seen my younger brother at the office when he went to pick the sprayer up and he said that I told him not to drive the truck and wanted to know if he could and Ray told him he can't because I run the men.

On cross-examination, Paul declared:

Q. Had you had trouble with Ricky Pratt not being on time before?

A. Yes.

Q. All right. The day before this accident occurred, was he late?

A. Yes, he was.

Q. And is that what resulted in your conversation with him, that you couldn't have customers complain?

A. Yes. Absolutely, yes, it was.

Q. And as a result of that, you told him not to take the truck home again?

A. I did.

Q. Correct?

A. Yes, sir.

Q. And it was your intent that the van was going to pick him up and drive him to the shop?

A. Yes.

. . .

Q. And you found out at that point that Ricky [Pratt] had not showed up with the truck?

A. Absolutely.

Q. Now, that was in violation of your specific instructions to him?

A. Yes, it was.

Q. And that you had a business reason for doing that which is to keep your customers happy and get him to work on time?

A. Yes, it was.

Melanie Adams, the CNA claims specialist, testified regarding her conversation with Pratt at his apartment:

Q. What did you ask him or what did you talk with him about, about the day before the accident?

A. I asked him if he knew—I specifically asked him if he knew he was not supposed to take the company truck home that evening. And he said—

Q. That's something you found out from—

A. Well, I—yes.

Q. Through investigation?

A. The work comp adjustor had advised me that she had information that he was not supposed to use that truck and I had spoken with some of our insureds. I had spoken with Paul and several other people. And so, yes, I was aware that the information was he was not to use the truck. So, I asked him pointblank did you know you weren't supposed to use the truck.

Q. And what was his response?

A. He said he knew it.

Q. Did he tell you why he took the truck?

A. He said he didn't want to fool with having to take it back to meet the guys. Something to that effect. I didn't want to fool with it, it was too much trouble. Something to that effect.

Q. That he knew he was not supposed to take the truck home?

A. He did admit that he did—knew he was not to use the truck.

Tony Wilson stated:

Q. I'll repeat the question. Did you overhear a conversation between Paul and Ricky about Ricky being able to use the truck and taking the truck?

A. Yes, sir.

Q. What did you hear discussed?

A. Paul had finally gotten a hold of Ricky and Paul was on the job, I was standing right beside Paul Morris. He told Ricky, said that afternoon, because he was not getting to work on time, that it would be—before he left the island to bring the Blazer to me at my job in Sea Pines and I was to take Ricky home and bring the Blazer to Paul Morris' house.

Q. Now, did you ever see Ricky Pratt that day?

A. No, sir.

Wilson further expounded:

Q. We've talked about a conversation Paul had with Ricky, right? You were—you heard that?

A. Yes, sir.

Q. And you've already testified that he told him not to take the truck home?

A. Yes, sir.

Q. But to deliver it to you, right?

A. Yes, sir.

Q. Did he discuss with him how he was supposed to get to work the next day?

A. Yes, sir, he did. He told me and he told Ricky on the phone that he would have someone come and pick him up the next morning.

Relying on *Hines v. Hendricks Canning Co.*, 263 S.C. 399, 405, 211 S.E.2d 220, 222–23 (1975), which determined "the opinions of the Supreme Court of North Carolina construing [the Workers' Compensation A]ct are entitled to great weight," Pratt cites *Hoyle v. Isenhour Brick & Tile Co.*, 306

N.C. 248, 293 S.E.2d 196 (1982), to support his position. *Hoyle* is inapposite to the instant case. In *Hoyle*, the evidence showed the employee was faced with the choice of abandoning the furtherance of his employer's business or acting in contravention of a previous order. The *Hoyle* court enunciated:

> Likewise, disobedience of a direct and specific order by a then present superior breaks the causal relation between the employment and the resulting injury. This is patently so; the employee's subjective belief concerning the advisability of his course of action becomes irrelevant since there would be no room for doubt as how best to serve his employer's interest in the face of the employer's direct and immediate order. Conversely, when there is a rule or a prior order and the employee is faced with the choice of remaining idle in compliance with the rule or order or continuing to further his employer's business, no superior being present, the employer who would reap the benefits of the employee's acts if successfully completed should bear the burden of injury resulting from such acts. Under such circumstances, engaging in an activity which is outside the narrow confines of the employee's job description, but which is reasonably related to the accomplishment of the task for which the employee was hired, does not ordinarily constitute a departure from the scope of employment.
>
> ... We are therefore of the opinion that employee's election to disobey a prior given order did not break the causal connection between his employment and his fatal injury if the disobedient act was reasonably related to the accomplishment of the task for which he was hired. . . .

*Hoyle*, 293 S.E.2d at 202–203 (citations omitted). The court based its decision on the fact that the employee was acting in furtherance of the employer's business, even though he was disobeying the employer's order.

Here, the facts are dissimilar and contrastive. Thus, *Hoyle* has no precedential value.

We conclude the testimony in the record is sufficient to support the Commission's finding that Pratt chose to drive the truck home in violation of his employer's prohibition, thus acting outside the scope of his employment. We hold Pratt

left the **sphere of his employment** by violating the specific order to deliver the vehicle to Tony Wilson. Consequently, Pratt was not entitled to Workers' Compensation benefits.

## II. Efficacy of "Going and Coming Rule"/Furnishing of Transportation by Employer

 Pratt maintains the Circuit Court erred in determining the employer did not furnish transportation to him. We reject this argument.

Pratt testified:

Q. Okay. Were there any deductions from your hundred dollars a day?

A. Just workman's comp, you know.

Q. Okay. Were there any deductions or payments between you and the company relevant to transportation?

A. Yeah. He took out for gas.

Q. And how much was that?

A. I think it was 25 a week. I think. I don't remember.

Q. And was there any difference in the 25 or—dollars a week, or whatever figure was correct, when you drove than when you were not driving?

A. No.

Ray Morris stated:

Q. What was your arrangement for transportation of your employees?

A. The ones that did not have a vehicle or no means of transportation to pick them up from their house and drop them off at their house. We charged them $35 a week.

 Under the "going and coming rule," an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and, therefore, an injury sustained by accident at such time does not arise out of and in the course of his employment. *Medlin v. Upstate Plaster Serv.*, 329 S.C. 92, 495 S.E.2d 447 (1998); *McDaniel v. Bus Terminal Rest. Mgmt. Corp.*, 271 S.C. 299, 247 S.E.2d 321 (1978); *Gallman v. Springs Mills*, 201 S.C. 257, 22 S.E.2d 715 (1942); *Gray v. Club Group, Ltd.*, 339 S.C. 173, 528 S.E.2d 435 (Ct.App.2000). "South Carolina has recognized a number of

exceptions to this rule." *Medlin,* 329 S.C. at 95, 495 S.E.2d at 449. One exception states that the rule does not apply "[w]here, in going to and returning from work, the means of transportation is provided by the employer, or the time that is consumed is paid for or included in the wages[.]" *Id.; Sexton v. Freeman Gas Co.,* 258 S.C. 15, 187 S.E.2d 128 (1972); *Gray,* 339 S.C. at 188, 528 S.E.2d at 443.

In the case at bar, the testimony demonstrates the employer was not providing the transportation. On the contrary, each employee was required to pay for his own transportation, with thirty-five dollars being deducted from the employee's weekly paycheck. Accordingly, Pratt's argument is meritless.

### III. Covered Contractor

■ Pratt avers he was a "covered contractor" and not subject to "detailed instructions and paternalistic discipline." Based on this assertion, Pratt alleges that his violation of his employer's orders did not void Workers' Compensation coverage.

■ It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review. *Staubes v. City of Folly Beach,* 339 S.C. 406, 529 S.E.2d 543 (2000); *Joubert v. South Carolina Dep't of Soc. Servs.,* 341 S.C. 176, 534 S.E.2d 1 (Ct.App.2000); *Harris v. Bennett,* 332 S.C. 238, 503 S.E.2d 782 (Ct.App.1998). *See also Creech v. South Carolina Wildlife and Marine Resources Dep't,* 328 S.C. 24, 491 S.E.2d 571 (1997) (issue not raised to trial court is not properly before appellate court).

Pratt did not raise this issue before the Single Commissioner or in his Request for Commission Review of the Single Commissioner's order. The issue was not ruled upon by the Commissioner, the Full Commission, or the Circuit Court. Concomitantly, the issue is not preserved for our review.

■ Further, the "going and coming rule" does not apply to independent contractors. This rule relates to "an *employee* going to or coming from the place where his work is to be performed." *Gray v. Club Group, Ltd.,* 339 S.C. 173, 188, 528 S.E.2d 435, 443 (Ct.App.2000) (emphasis added). Thus,

Pratt's argument relating to independent contractor status is without merit.

## *CONCLUSION*

Based on the foregoing reasons, the order of the Circuit Court affirming the decision of the Workers' Compensation Commission is

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.